RESTANI, Judge:
This is a consolidated appeal from orders of the United States District Court for the Northern District of West Virginia, affirming four final orders of the bankruptcy court. We affirm the district court.
BACKGROUND
Appellants, EEE Commercial Corporation (EEE) and other unsecured creditors of A.S.I. Reactivation, Inc. (ASIR), the debtor, filed an involuntary petition against ASIR under Chapter 7 of the bankruptcy code on May 24, 1985. The petition was not contested and an order of relief was entered on June 21, 1985 by the bankruptcy court. William T. Holmes was appointed trustee.
On August 21, 1985, Ram Narayanan, the President and majority shareholder of ASIR sought modification of the automatic stay of foreclosure with respect to the debtor’s principal asset, its equipment. The trustee consented to modification. The unsecured creditors, however, opposed the relief sought and an evidentiary hearing was held. On January 29, 1986, an order was entered granting relief from the stay as to the equipment. A motion for reconsideration was denied on March 14, 1986. Appeal of the district court’s affirmance of the bankruptcy court order modifying the automatic stay with regard to the equipment is before us.
On January 15, 1986, the unsecured creditors filed a complaint seeking the avoidance of certain post-petition transfers of assets and payments to creditors. The unsecured creditors were found to lack standing to pursue the claims in their own right and, pursuant to a June 20, 1986 order of the bankruptcy court, the trustee was substituted as plaintiff. He continued the action against Narayanan and a Naray-anan related entity, Adsorption Systems, Inc. (ASI), two of the four defendants named in the creditor’s defective action. The trustee reached an agreement to settle the avoidance action for $12,500. The unsecured creditors opposed the settlement and a hearing was held. On May 8, 1986, the bankruptcy court entered an order approving the settlement at the agreed amount. The district court’s affirmance of this order is also before us on appeal.
The next appeal involves the trustee’s sale and transfer of the debtor’s contract with the Department of the Navy to Carbon Reactivation, Inc. (CRI), another Na-rayanan related company. The trustee sought approval to permit the transfer for a payment to the estate of 1.6/pound of processed carbon. The unsecured creditors opposed the sale. In connection therewith, they pressed an earlier motion to compel discovery with respect to CRI’s operations and finances. On May 30, 1986, the bankruptcy court denied the motion to compel discovery and a hearing was held on the Navy contract sale on June 4, 1986. The sale was approved as negotiated by the trustee, and the district court’s affirmance of the bankruptcy court’s rulings on the discovery motion and on the sale are before us.
On June 13, 1989, the bankruptcy court awarded the trustee $10,934.31, representing attorney’s fees and expenses. The district court’s affirmance of that order is also before us.
FACTS
ASIR was incorporated in 1982. It produced reactivated (purified) carbon for use in pollution control. Until 1984 ownership was split between ASI (owned by Narayan-an and his children) and EEE (owned by Robert Anderson and Richard Bailee). Anderson and Bailee operated ASIR. On January 11, 1984, ASI sold a large portion of the debtor’s stock to a group of investors and Narayanan resigned from the ASIR board. Anderson became president. In February, 1985, ASI repurchased suffi *1319 cient ASIR stock so that Narayanan rejoined the board and became president.
In early 1985, when Narayanan resumed an active role in ASIR, considerable creditor pressure against ASIR existed. One of the secured creditors, Citizen Bank of Weirton, was threatening foreclosure of the debtor’s equipment and fixtures. For $120,000 Narayanan took an assignment of the debtor’s $196,000 note and the bank’s security interest in the debtor’s equipment and fixtures.
In order to operate, ASIR was required to hold air and water pollution control permits. Apparently the permits under which ASIR had operated were in the name of EEE. Anderson refused to permit the assignment of the permits to ASIR after Na-rayanan resumed control of ASIR. Obtaining the permits in the debtor’s name required about $50,000. Apparently ASIR had no such funds. At this point Narayan-an decided not to attempt to revive ASIR.
After the involuntary petition was filed, but prior to the entry of the order of relief, Narayanan caused ASIR to assign three leases to CRI and to lease the encumbered equipment to CRI. The assigned leases of realty and personalty carried past due obligations, which were assumed by CRI. The equipment was leased to CRI at a monthly rental of $1,500, $1,000 of which was to be paid by CRI to Narayanan for application to the secured debt and $500 of which was to be paid to the trustee. As indicated previously, the Navy contract, which was awarded after the involuntary petition was filed, was assigned to CRI. CRI, a non-bankrupt entity, was able to obtain the necessary operating permits, maintain the equipment and add about $30,000 in improvements and additions to the equipment. CRI’s agreement with the trustee, which was approved by the bankruptcy court, required CRI to pay the trustee 1.6 out of an expected profit of 3.6 per pound of carbon processed for the Navy.
With respect to counsel fees, the trustee employed himself as attorney at the rate of $75 per hour, which rate was approved by the court. Collections by the trustee were approximately $42,000. Attorney’s fee claims, while based on the hourly charges, were limited to twenty-five percent of recoveries.
' DISCUSSION
Despite the parties’ briefs, this appeal is not about whether Mr. Anderson or Mr. Narayanan, or both, ruined ASIR. There are various charges by each, none of which need be recounted here. In addition, in spite of appellant’s arguments to the court, this appeal does not concern whether Mr. Narayanan should have been forced to abandon his interests as a creditor and to operate ASIR as principal, perhaps under a Chapter 11 reorganization. First, appellants raise no possible theory under which Mr. Narayanan could be compelled to continue operating ASIR. Second, the unsecured creditor forced an involuntary bankruptcy upon ASIR. Third, no motion was filed to convert the proceeding to one for reorganization under chapter 11. See 11 U.S.C. § 706(b) (1988). ASIR was forced into liquidation and it was liquidated. The only questions before us concern whether the provisions of the bankruptcy code were met and whether the district court, in finding that the law was satisfied, affirmed clearly erroneous factual findings or abuses of discretion by the bankruptcy court.
I. Relief from Automatic Stay of Foreclosure
The first issues before us on appeal involve Narayanan’s motion to modify the automatic stay provided by 11 U.S.C. § 362 (1988). Narayanan sought modification of the stay allegedly to permit him to repossess and foreclose on the equipment and fixtures of ASIR in which he held a secured interest. In support Narayanan stated that payment on the debt was past due and that the note was being accelerated so that the entire $196,000 note was immediately payable. Narayanan claimed that the note was undersecured, and that his security would not be adequately protected in the hands of the debtor. EEE, et al. contested Narayanan’s contention that there was no equity in the property for the estate and alleged that as an insider Narayanan had *1320 improperly transferred the security and presently had control over it. Narayanan responded by describing the lease of equipment to CRI and its benefit to the estate and reiterating the lack of any debtor’s equity in the property or adequate protection for his interests.
Under the language of 11 U.S.C. § 362(d) (1988), a court may grant relief from a stay of foreclosure for cause, including lack of adequate protection. Alternatively, relief may be granted if the debtor has no equity in the property, and the property is not necessary to an effective reorganization.
After hearing ail of the testimony, including that of an appraiser, the bankruptcy court concluded that the value of the collateral was no greater than $126,000, and that a valid debt of $201,000 existed.[1] Accordingly, the court concluded that the estate had no equity in the property.
Although they quibble with the appraiser’s findings appellants presented no alternative appraisal evidence. Anderson did testify in general terms that the appraisal was low, but he was not qualified as an expert at appraisal and he was not a disinterested witness. The $126,-000 was described as an “in place” value. This was not “liquidation value” but rather what the appraiser would expect a buyer to pay if it could take the equipment along with the lease rights, enabling it to retain and operate the equipment in place. Appellants assert that a true “going concern” value would be much higher than $126,000. As indicated, no specific evidence of such a higher value was produced. Based on this record, this court cannot find that the bankruptcy court’s factual conclusions as to the value of the property and lack of equity for the estate were clearly erroneous. The court notes the proffered evidence of a tentative offer from a law partner of one of appellants’ attorneys to purchase for $300,000. The evidence was presented in connection with appellants’ motion to reconsider. The bankruptcy court did not abuse its discretion in refusing to consider this belated evidence of limited probative value.
In addition to finding lack of equity for the estate, the bankruptcy court also found lack of adequate protection for the secured interest. A secured creditor’s property rights may be adequately protected through a stream of payments, a replacement lien or other compensation. See 11 U.S.C. § 361 (1988). Obviously the first two forms of protection are not present. Appellants’ notion that the secured creditor is adequately protected because an affiliated company has possession and could maintain and use the property in limited ways is dubious. Furthermore, because of the finding of lack of equity, the adequate protection issue ultimately is of no import.
As indicated, lack of adequate protection is an alternative ground for lifting of a stay. Without plans for operation of the enterprise by the estate or an equity interest there simply is no reason to deny the secured creditor his full rights in the property. All of the cases cited by appellants on the point involve chapter 11 reorganizations. Chapter 11 has as its goal the operation of a business free of past obligations. The goal of chapter 7 is quite different, that is, fair and efficient liquidation and distribution of assets. Under the facts of record, relief from stay in no way would interfere with the administration of this estate.
Appellants claim, however, that the entire lien claim should have been equitably subordinated, that is, that the creditor/owner should be deprived of his secured status, thus creating an equity interest in the property for the estate. While a bankruptcy court may equitably subordinate a claim of an insider or other persons and may transfer a lien held by such persons to the estate under 11 U.S.C. § 510(c) (1988), appellants did not establish *1321 at the evidentiary hearing that such subordination was warranted.
Generally, equitable subordination involves a number of inquiries: 1) whether the claimant engaged in fraudulent conduct, 2) whether the conduct resulted in injury to creditors and 3) whether subordination would be consistent with other bankruptcy law. See Holt v. Federal Deposit Ins. Co. (In re CTS Truss, Inc.), 868 F.2d 146,148 (5th Cir.1989) (assuming arguendo bank’s conduct was attributable to FDIC, conduct did not fall within classic pattern warranting extraordinary remedy of equitable subordination); Wilson v. Huffman (In re Missionary Baptist Foundation of America, Inc.) 712 F.2d 206, 212 (5th Cir.1983) (bankruptcy court must make explicit findings on each of the three elements when granting equitable subordination); Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692, 699-700 (5th Cir.1977) (as court of equity, bankruptcy court may subordinate claim if three conditions are met). As to purchase of the secured note, there was simply no evidence that it was either fraudulent or injurious. The record indicates Narayanan used his own funds to buy the note. There is nothing in the bankruptcy act which per se forbids a principal from obtaining and asserting rights as a lien creditor. Here there is also evidence that Narayanan bought the note to stave off a foreclosure, for the company’s benefit, as well as to solidify his position. If some particular creditor was deceived into dealing with this corporation by this transaction, that was not demonstrated. Thus, the debt underlying the note and the lien were properly recognized by the bankruptcy court.
Appellants also sought to litigate a panoply of other fraud claims in connection with the relief from stay proceeding. As stated, however, in County Fuel Co. v. Equitable Bank Corp., 832 F.2d 290, 293 (4th Cir.1987) (standing alone, order lifting stay did not bar breach of contract action against creditor on res judicata grounds, although other factors warranted finding of waiver):
[T]he only matters potentially in issue in relation to a motion to lift an automatic stay relate to the adequacy of the creditor’s protection, the debtor’s equity, and the necessity of the property to effective reorganization; the merits of claims are not in issue and the procedural setting is not one appropriate for the assertion of counterclaims.
Citing Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740 (9th Cir.), cert. denied, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) (motion for relief of stay gives rise to summary proceedings not appropriate to adjudication of the merits of the underlying claim). See also In re Roloff 598 F.2d 783, 788 (3d Cir.1979) (provision for relief from stay was not a grant of jurisdiction to bankruptcy court to hear counterclaims or affirmative defenses as to substance of prior state court foreclosure proceedings).
A bankruptcy court is a court of equity. Assuming arguendo that there is a degree of fraudulent conduct sufficient to warrant consideration of collateral fraud claims in connection with a motion for modification of an automatic stay, there is no basis to presume plaintiffs could demonstrate such a level of fraud. Plaintiffs have not demonstrated that the debtor’s leases and contracts with their benefits and burdens were fraudulently assigned to CRI or that the trustee, in order to benefit the estate, should or could have assumed the contracts under 11 U.S.C. § 365(f) (1988). Although transfers such as these, which are made during the pre-order of relief period under 11 U.S.C. § 303(f) (1988), may be avoided under 11 U.S.C. § 549(a) (1988), the benefit to the estate of such avoidance has not been demonstrated. Rent was past due on the leases and there was no evidence that the trustee could find another assignee of the carbon reactivation contract acceptable to the Navy, and in time to avoid breach. How lease of the encumbered collateral prior to the order of relief injured the estate and how avoidance of the transfer would benefit the estate are unanswered questions. In fact, this lease might be viewed as beneficial to the estate, as well as to Narayanan. While Narayanan might have believed that with further investment, improvement of the equipment *1322 and use of his own skills he could make a profit with the equipment in place, the history of the debtor indicates that this was a risky venture. Furthermore, none of the post-petition transactions were hidden and they were agreeable to the trustee. However one views the motivation for Narayan-an’s post-petition conduct, such conduct has not been shown to be fraudulent or injurious to the estate. Consequently, we cannot find error in the bankruptcy court’s decision not to adjudicate these matters in connection with the stay proceeding.
Appellants also allege that any failure to present evidence of fraud or of a higher valuation of the equipment was the result of a premature hearing and lack of opportunity for discovery. After the order of relief, many months passed before the hearing on modification of the stay was held. During this period, schedules were filed, the debtor was examined as to ASIR’s assets, operations and finances, and Narayanan was deposed. Although he did not testify in detail about ASI’s or CRI’s operations and finances, he did testify about the corporate and financial relationships among himself, ASIR and these corporations. Under these facts and in light of the statutory mandate of prompt action on requests for relief from stay, the court cannot be said to have abused its discretion in not delaying the hearing for further discovery.[2] Why examination of the finances and operation of CRI was crucially relevant to the relief from stay hearing, to the extent that the hearing should have been postponed for discovery purposes, has never been demonstrated. What returns CRI could generate with the improved and properly maintained equipment in a fully permitted and managed operation is not particularly relevant to value for Chapter 7 purposes. The bankruptcy court must decide what is a commercially reasonable value of property in the context of the particular case. The bankruptcy court appears to have accepted a valuation which took into consideration income generating potential. Valuation was not dependent on the income generating potential of the property in other unique circumstances. While the bankruptcy court might have permitted evidence of CRI’s operations as probative in some degree, it had valid reasons for limiting the hearing to more directly relevant evidence. See discussion, infra part III.
In sum, no significant error on the part of the bankruptcy court or the district court has been revealed with regard to the order granting modification of the automatic stay.
II. Compromise of the Adversary Action to Avoid Transfers and Recover Preferential Payments
The trustee’s adversarial action claimed that $34,402 in preferential or otherwise recoverable payments were made. That action was compromised for a total payment of $12,500. Appellants’ main contention seems to be that the trustee did not pursue other claims. Although they never appealed denial of a motion to remove the trustee or sought to preserve specific issues relating to the bringing of a larger action, appellants claim that the compromise, which was approved by the bankruptcy court, unfairly settled such potential actions.
Because the “other” claims were not the subject of the trustee’s action the court has a limited record upon which to judge such allegations. Furthermore, if these other claims are before us as to ASI, CRI and the Narayanans, it is only because the appealed order approved a general release of these parties. For the sake of discussion the court will assume that certain issues relating to the release have been preserved, although this is by no means clear from the record. The court will treat each set of claims in turn.
First, the record reveals that the trustee decided not to pursue a separate claim against Sheila Narayanan because ASIR’s records revealed that the funds received by her were used to meet ASIR’s *1323 payroll and other pressing obligations. The amount involved was small, and the decision to proceed would appear to be well within the discretion allowed a trustee to maximize recoveries for the estate without totally expending limited assets.
Appellants make general allegations that the trustee did not pursue all preferential payments. Apart from the compromise payment, the trustee did recover other preferential payments. Furthermore, as indicated, the release did not cover all transferees and claims against such non-released transferees are not before us. From this record one may conclude, however, that the trustee made some cost benefit decisions in bringing some preference actions and not others.
Appellants also allege that a number of payments were made for the benefit of CRI and ASI and that appellants noted to the bankruptcy court that the release would apply to them as well. Appellants did not go further and demonstrate to the court why the release was improper. To meaningfully preserve this issue for appeal appellants should have made specific motions before the bankruptcy court with respect to the action desired by the court. Failure to so move also applies to appellants’ contention that ASI improperly offset its $41,531 debt to ASIR against the $123,000 debt ASIR owed to it. Certain setoffs are permissible under 11 U.S.C. § 553 (1988). If this one was not, the record does not demonstrate it. Appellants also claim ASI improperly terminated its contracts with ASIR. The record reveals that the termination was mutually desired because ASIR was no longer operating. There is no evidence that this was a unilateral contract termination.
Turning to the compromise of the claims which are directly before us, appellants claim that the trustee should not have compromised the claim to recover a post-petition payment to ASI. If ASI’s payment to the debtor of approximately $30,000 was a post-petition loan, repayment to ASI would stand under 11 U.S.C. §§ 303(f) (1988) and 549 (1988), or ASI would be a priority creditor under 11 U.S.C. § 507 (1988). As a priority creditor such a post-petition creditor would take distribution from the estate prior to appellants, unless its claim was equitably subordinated. If the $30,000 were a capital contribution, rather than a true loan, repayment of the $30,000 would be voidable by the estate.
There was testimony and documentation to support the loan theory. Insider loans, however, should be subjected to close scrutiny. See 11 U.S.C.A. § 101(31) (West Supp.1991) (definition of insider).[3] Such loans may be treated as capital contributions if they result in injury to creditors or confer an unfair advantage on the claimant. See discussion of equitable subordination, supra Part I; L & M Realty Corp. v. Leo, 249 F.2d 668 (4th Cir.1957) (stockholder loans to undercapitalized corporation subordinated). Because here the “loan” resulted in an actual infusion of funds and was made post-petition, that is, after all creditors were on notice of corporation’s financial woes, it is difficult to see how appellants could have been unfairly disadvantaged by the “loan.” Whether some unfair advantage accrued to Narayanan would seem to be the subject of difficult, if not impossible, litigation. Accordingly, this transaction appears to be a proper topic of settlement.
Apparently a separate $4,000 payment was admitted to be a preference. Given the risk of litigation and the inherent inexactitude of compromise the court cannot find error in the bankruptcy court’s approval of a compromise of the $34,000 in total claims for $12,500. Such matters are within the bankruptcy court’s discretion. St. Paul Fire & Marine Ins. Co. v. Vaughn (In re Vaughn), 779 F.2d 1003 (4th Cir.1985) (bankruptcy court’s approval of a settlement between insured and the trustee in bankruptcy was proper because objecting insurance company did not demonstrate that the settlement was not in the estate’s *1324 best interests). Abuse of discretion has not been demonstrated.
III. Sale of the Contract with the Department of the Navy
As indicated, the bankruptcy court granted the trustee’s request for sale of ASIR’s Navy contract to CRI for 1.6/pound of carbon processed for the Navy. CRI was to receive 45 per pound from the Navy with an expected profit of 3.6$/pound.
The terms of the sale must be considered against the background of ASIR’s inability to perform the contract because of lack of funds for investment in a permit, maintenance or improvements, together with lack of management willing to continue operations. The only testimony on the subject revealed that $30,000 had been invested by CRI in improvements or additions to equipment and another $125,000 was needed. Further testimony indicated that CRI’s 1985 costs of production were in excess of the gross proceeds of the Navy contract. Based on this record, we cannot find error in approval of the assignment of the contract. The assignment resulted in the avoidance of breach damages and in the accrual of some funds for the estate, in a situation where the debtor could not perform the contract, time was of the essence, and the profits to be made appeared limited.
Appellants’ chief argument seems to be that it could not establish that the sale of the contract harmed the estate because it was not allowed discovery of CRI’s books and records to verify actual costs and profits. Given some appellants’ status as competitors and given the acrimonious relations of the parties, the court was justifiably reluctant to allow appellants full access to CRI’s financial data.[4] To resolve this problem the court reviewed cost data in camera and allowed a financial expert to testify about CRI’s operations in summary fashion and to be cross-examined.
Discovery is generally permitted if it may lead to admissible evidence. Nonetheless, judges must balance various interests in granting discovery requests and may only be reversed for abuse of discretion in such situations. See Keyes v. Lenoir Rhyne College, 552 F.2d 579, 581 (4th Cir.), cert. denied, 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). If information on the details of CRI’s costs were crucial, the bankruptcy court’s decision might be faulted. Here, however, there was little to be gained from full access, and potentially much to be lost. Furthermore, the in camera inspection guarded against outright fabrication. Given the full disclosure of ASIR’s costs for the same type of work and the summary disclosure of CRI’s costs, it was clear that if any profit was being made, it was not large. Thus, in balancing the risks of broader discovery in this situation against the limited potential for revelation of useful information, the bankruptcy court cannot be said to have abused its discretion.
ATTORNEY’S FEES
Finally, appellants contest trustee attorney’s fees. Decisions as to the amount of attorney’s fees which should be awarded are peculiarly within the bankruptcy court’s discretion.
The court reviewed Mr. Holmes’s claim as both attorney and trustee, noted the time billed as attorney and found it necessary to proper administration of the estate. Holmes billed almost $14,000 as attorney’s fees but limited his claim to 25% of anticipated recoveries. Furthermore, only one-half was to be paid until the anticipated recoveries were actually collected. The court’s action in approving such payments seems eminently fair to creditors.
In addition, based on the discussion of the other issues herein, it is apparent that the court did not err in denying Mr. Holmes’s fees on the basis that he was a “bad” trustee or attorney. The trustee *1325 did not exhaust the estate in pursuing all possible claims. If he and the bankruptcy court erred in their assessment that Mr. Narayanan and his corporations essentially acted properly, even though they were insiders acting in their own interest as well, such error is not evident from the record. The bankruptcy court was aware of the potential for improper insider action and gave careful consideration to the propriety of the actions brought to its attention. The district court did not err in affirming the bankruptcy court’s findings.
The decisions before us in these consolidated appeals are affirmed.
AFFIRMED.

. Appellants claim the full value of the debt should not be considered. The unsecured creditors did not press a claim for partial subordination of the debt, so that it would be limited to the $120,000 actual payment rather than the face amount of the debt. Assuming arguendo that they could succeed on such a theory, the near equivalence of value and debt would likely warrant no different result.

. 11 U.S.C. § 362(e) (1988) provides for termination of the stay within thirty days of a request for relief from stay, unless the court orders its continuance pending a final hearing. The final hearing must be commenced within thirty days of the conclusion of the preliminary hearing.

. An "insider” is one with "sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.” S.Rep. No. 989, 95th Cong., 2d Sess. 25, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5810.

. There is no indication that Exhibit I, a summary of CRTs carbon processing costs prepared by the financial witness, which was objected to as hearsay, was introduced. In any case, it is merely duplicative of testimony. The essential problem is the lack of access to the basic books and records which formed the basis for the financial witness’s opinion about CRTs costs.