In re **LANDBANK EQUITY CORPORATION**, a Virginia Corporation, Debtor.

**INTERNAL REVENUE SERVICE,** Plaintiff–Appellant,

v.

Laurence H. **LEVY**, Trustee, **Defendant–Appellee,**

Debera F. Conlon, Appellee.

No. 91–1780.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1992.

Decided Aug. 14, 1992.

As Amended Oct. 27, 1992.

Janet Kay Jones, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Gary D. Gray, Tax Div., U.S. Dept. of Justice, Washington, D.C., Richard Cullen, U.S. Atty., Norfolk, Va., on brief), for plaintiff-appellant.

David Huntington Adams, Clark & Stant, P.C., Virginia Beach, Va., argued (Donna J. Hall, Michelle P. Burchett, on brief), for defendant-appellee.

Before PHILLIPS and NIEMEYER, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

In this appeal we are asked to decide whether the fact that a dispute over a tax deduction for bad debt losses under 26 U.S.C. § 166 arises in the context of a bankruptcy proceeding reverses the long-established requirement that the taxpayer bears a burden of proving that the debt became worthless in the particular year in which the deduction was taken. *See Belser v. Commissioner*, 174 F.2d 386, 389 (4th Cir.), *cert. denied*, 338 U.S. 893, 70 S.Ct. 240, 94 L.Ed. 549 (1949). Because we conclude that Congress, by merely providing for the consideration of tax claims in the bankruptcy courts, did not intend implicitly to alter established interpretations of the tax laws, we reverse the decision of the district court insofar as it permits the trustee to deduct bad debt losses in years for which the trustee could not meet his burden.

I

From 1981 through 1985, William and Marika Runnells owned and operated the Landbank Equity Corporation and its wholly owned subsidiary, Richmond Equity Corporation. Landbank was in the business of making loans secured by second mortgages which were then sold on the secondary market to institutions such as the Federal National Mortgage Association, banks, and savings and loan associations. In doing so, however, Landbank falsified loan histories

to make them look more attractive for sale. It also agreed to and did service or buy back loans that went into default to hide the nature of its scheme from the potential buyers of what in many cases turned out to be worthless loans. Probably because its business success depended on its loan purchasers' belief that the loans were of high quality, Landbank did not accurately maintain its financial records with respect to loan delinquencies, nor did it report bad debt losses on its corporate tax returns.

In September 1985, Landbank and Richmond Equity petitioned for bankruptcy protection under Chapter 11. Shortly thereafter their cases were converted to Chapter 7 liquidation proceedings and Laurence H. Levy was appointed bankruptcy trustee for the estate. The true nature of the debtors' "business" surfaced soon after the initiation of the bankruptcy proceedings, eventually leading to the criminal fraud convictions of both the Runnells and their accountant and to the suicide of a vice president.

In December 1985, the Internal Revenue Service (IRS) submitted a proof of claim against the bankruptcy estate for an estimated $4.4 million in owed taxes, interest, and penalties for the tax years 1982–85. After conducting an audit, the IRS revised its assessment, asserting deficiencies for these years totalling approximately $879,000 plus interest and penalties. In determining the amount of taxes owed for the tax years 1982–85, the IRS allowed as deductions the reasonable additions to bad debt reserves that it estimated Landbank could have claimed for each year, amounting to $6.4 million in total deductions for the four years.

Under the tax law in place at that time, a corporation could take deductions for bad debts using either an "actual method" of accounting, in which the taxpayer was allowed to deduct bad debts in the tax year in which they actually became worthless or a "reserve method" which allowed deductions for "reasonable additions" to a bad debt reserve. *See* Act of Aug. 16, 1954, ch. 736, 68A Stat. 1, 50, *repealed by* Tax Reform Act of 1986, § 805(a), 100 Stat. 2085, 2361. Under the reserve method, the corporation would later "charge off" against the reserve the actual losses as they occurred and any reserve ultimately remaining after all "charge offs" would be returned to income.

In conducting its audit, the IRS used the reserve method because, in the absence of accurate financial records, the actual amounts of bad debt losses incurred by Landbank could not be determined for each year. Based on its audit for the tax years 1982–85, the IRS submitted to the trustee a Form 870 (Consent to Assessment of Deficiencies) which the trustee signed on the advice of his accountant. By signing a Form 870, the taxpayer gives consent to the IRS's assessment of taxes as shown on the form. The form also serves as the taxpayer's tax return for the years indicated on the form.

When the trustee filed Landbank's 1986 tax return, which was not covered by the Form 870, he added $2.8 million to the bad debt reserve as a deduction, so that as of that time the reserve totaled over $9.2 million. The trustee then charged off $9.1 million against the reserve as if that amount of bad debt losses occurred in 1986. Because that method of accounting, however, would still leave the estate liable to pay taxes owed for the years 1982–85, as shown on the Form 870, the trustee filed an objection to the IRS's proof of claim. Along with several other objections not the subject of this appeal, he requested that he be allowed to revert to an "actual method" of accounting for bad debts during these earlier years and allocate the $9.1 million in losses over those years in proportion to the income reported in them. By this method, the trustee claims that the taxpayer would owe no taxes.

The bankruptcy court, as a matter of equity, sustained all of the trustee's objections, disallowed the IRS's claim, and thus relieved the bankruptcy estate of all tax liability for the years in question. Recognizing the efforts of the trustee in uncovering the taxpayer's fraud and preserving an estate for creditors, the bankruptcy court stated:

If there had not been the bankruptcy of Landbank Equity Corporation, in my opinion, having presided over the case, [it is] quite unlikely that the Internal Revenue Service would have gotten much, if anything, from this case.

\* \* \* \* \* \*

So I think the IRS is requiring in this case a line, hard line, statutory line, whatever it may be, that makes it extremely difficult when so many things do not later come to light.

\* \* \* \* \* \*

There are times when justice and equity would require—and this is in accord with that—would require that something else be done. And the Court feels that the trustee, relative to allocation, should be entitled to refile, to refile anything if there is a clearer picture at this time.

The IRS appealed this decision, and others not raised here, to the district court, which affirmed the bankruptcy court. 130 B.R. 28. The district court concluded that the IRS, by failing to object to the taxpayer's 1986 return, admitted to bad debt losses of $9.1 million, which were charged off against the reserve. The court stated, "The IRS has not claimed that Landbank did not incur these bad debt losses. It merely claims that because the trustee cannot prove exactly when Landbank incurred the bad debt losses, he cannot take deductions for them in any particular year...." Indeed, the court recognized that "it would be impossible" for the trustee to prove when specific debts actually became worthless. Recognizing that "[t]he burden would normally be on the taxpayer" to prove the tax year in which the bad debt losses occurred, the district court held that in a bankruptcy proceeding, Bankruptcy Rule 3001(f) shifts the burden of proof from the trustee to the claimant once the trustee adduces some evidence supporting his objection to the claim filed. The court concluded that the IRS did not meet its burden of demonstrating that the losses were not properly allocated as proposed by the trustee and that the IRS's creation of a bad debt reserve for the taxpayer in the Form 870 was "a fiction devised by the IRS

after the fact." The district court therefore permitted the taxpayer to reallocate its bad debt losses over the tax years 1982–85 "in proportion to the year's share of total net income for the four years," thereby avoiding any tax liability.

This appeal followed.

## II

The sole question presented to us on this appeal is whether, in the context of a bankruptcy proceeding, the burden of showing entitlement to a deduction for bad debts shifts from the taxpayer to the IRS. The trustee, readily acknowledging that the records maintained by Landbank are not adequate to prove the year, or years, in which the $9.1 million in bad debt losses occurred, claims that as a matter of equity he ought to be able to allocate the losses over four years in proportion to the income reported. Accepting the trustee's claim, the district court decided that "[b]ankruptcy courts are essentially courts of equity" and to deny bad debt losses because the actual years in which they were sustained cannot be proved would "exalt form and technical considerations over substance and substantial justice." Confronted with the risk of failing to meet the traditional burden imposed on taxpayers to prove deductions claimed, the court relied on Bankruptcy Rule 3001(f) to require the IRS to prove its claim for taxes, including the proper allocation of deductions to be given the taxpayer.

On this appeal the IRS argues that the courts below erred by allowing the trustee to reallocate to the previous four tax years the $9.1 million in bad debts which the taxpayer charged off against its bad debt reserve in 1986. It contends that the taxpayer can take deductions for bad debts in only one of two ways. If the taxpayer can show that it owned debts that had some value at the beginning of the pertinent tax year and that they became worthless during the year, the taxpayer can claim a deduction in that year under 26 U.S.C. § 166(a). Alternatively, this taxpayer can, under 26 U.S.C. § 166(c) (repealed 1986),

deduct reasonable additions to a bad debt reserve against which it can charge future losses. The IRS argues that if the taxpayer is unable to provide proof of the actual loss during an applicable tax year, he cannot avail himself of the deduction for the actual loss, and the fact that the taxpayer is in bankruptcy does not alter that principle. In any event, it contends that equity provides no authorized basis for allowing the deduction.

■ Were this case to have arisen in a non-bankruptcy forum, there can be little doubt that the IRS would prevail on its argument that a taxpayer in the exact circumstances of the debtors here could not allocate bad debt losses in the manner suggested by the trustee and accepted by both courts below. The applicable section of the Internal Revenue Code, 26 U.S.C. § 166(a), provides the general rule, "There shall be allowed as a deduction any debt which becomes worthless *within the taxable year.*" (Emphasis added.) Under the Tax Code, "the burden is squarely placed upon the taxpayer to bring himself clearly within the statutory provisions authorizing the claimed deduction." *Belser v. Commissioner,* 174 F.2d 386, 389 (4th Cir.), *cert. denied,* 338 U.S. 893, 70 S.Ct. 240, 94 L.Ed. 549 (1949). "Deductions are a matter of legislative grace, and the taxpayer seeking the benefit of a deduction must show that every condition which Congress has seen fit to impose has been fully satisfied," *Wisely v. United States,* 893 F.2d 660, 666 (4th Cir.1990), and in this case, the trustee has not met, and concededly cannot meet, the requirements of 26 U.S.C. § 166(a). As the district court frankly observed, given the state of the debtors' financial records,

"[i]t would be impossible for the Trustee to prove the time at which specific debts became worthless." Thus, laying aside the fact that this case arises in the context of a bankruptcy proceeding, it is clear that the deduction would be properly disallowed.*

■ Thus narrowed, the issue for review is whether the fact that the debtors are now in bankruptcy materially alters the result which would otherwise obtain. We agree with the position of the IRS that it does not.

The position taken by the district court, and advanced by the trustee in this appeal, is that the Bankruptcy Code in some instances implicitly shifts the burden of proving the validity of a deduction from the taxpayer to the IRS. It is true that the Bankruptcy Code provides procedures for the resolution of claims against the estate which differ in certain respects from those procedures used in other federal judicial proceedings. For example Bankruptcy Rule 3001(f) establishes the "[e]videntiary effect" of a claim filed by a creditor as follows: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." In the case of an undisputed claim, these sorts of procedural modifications allow for the efficient resolution of the claim by the trustee and the bankruptcy court without the formalities of a complaint, answer, affidavits, and summary judgment, which might arise in the context of a federal civil proceeding.

However, we find nothing in the plain language of the Bankruptcy Code that expresses an intent to alter the burdens of proof or persuasion in the context of a

---

* The trustee argues in reliance on *Cohan v. Commissioner,* 39 F.2d 540 (2d Cir.1930), that even traditional tax principles allow estimation of deductions and do not require certain proof of the amounts. *See id.* at 543–44. Unlike this case, however, in *Cohan* there was evidence that deductible expenses had been incurred during the tax year in question. The court there reversed the Board's determination that only the actual records of the expenses would sufficiently prove their existence and remanded for consideration of any evidence which might result in an allowable deduction from income. *See id.* Thus, even if we were to accept the Second Circuit's view that the evidence available need not fix the deductible amount with absolute certainty, that would not relieve the trustee of the burden of producing some evidence that *at least* some of the debts owned by the debtors became worthless in a particular tax year. Moreover, it would appear that the Congress has abolished the specific holding in *Cohan* through substantiation requirements added to the code by the Revenue Act of 1962. *See Berkley Mach. Works & Foundry Co. v. Commissioner,* 623 F.2d 898, 902 & n. 3 (4th Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 147 (1980).

disputed claim against the bankruptcy estate. When a dispute arises, the code provides that it be resolved by the bankruptcy court or, in the case of a non-"core" dispute, by a district court. *See* 28 U.S.C. § 157(c)(1); *see also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion). Subject to some exceptions, the code expressly provides to the bankruptcy court jurisdiction to "determine the amount or legality of any tax" assessed against the debtor. *See* 11 U.S.C. § 505(a)(1).

In resolving disputed claims against the bankruptcy estate, it is important to understand that the Bankruptcy Code, in most instances, while providing a forum and procedures for an expedient dispute resolution, does not endeavor to supplant the substantive law under which the claim against the estate (or for that matter any defenses, counterclaims, or other rights claimed by either party to the dispute) arose. *See generally* Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 137, 93d Cong., 1st Sess., Pt. I, 68–71, 76–78 (1973). It would appear that the substantive law regarding claims against the estate gives way only in those instances in which the internal goals of the bankruptcy system require alteration of externally created substantive rights, including "(1) equality of distribution among creditors, (2) a fresh start for debtors, and (3) economical administration [of the bankruptcy system.]" *Id.* at 75; *see also id.* at 75–83; *cf. Michigan Employment Security Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1148 (6th Cir.1991) (noting that, although the bankruptcy court has power to determine the amount and legality of taxes under 11 U.S.C. § 505, " '[t]here is no power to reject [state] tax obligations, burdensome or otherwise' ") (quoting *In re Pine Knob*, 20 B.R. 714, 716 (Bankr.E.D.Mich.1982), *cert. dismissed*, — U.S. —, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992)). And in those instances in which the Congress has decided that the administration of the Bankruptcy Code requires alteration in the substantive rights of the parties, it has not hesitated to make such intentions clear. *See, e.g.,* 11 U.S.C. §§ 544–551, 553 (establishing in the trustee the power to avoid otherwise legal transfers of property for benefit of bankruptcy estate); 11 U.S.C. § 507 (establishing priorities for satisfaction of claims against the bankruptcy estate).

Turning to the specific question at hand, it is well established that matters of proof, such as are presented in the bankruptcy trustee's claimed tax deduction, are properly considered to be a part of the substantive tax laws. *See Dick v. New York Life Ins. Co.*, 359 U.S. 437, 446, 79 S.Ct. 921, 927, 3 L.Ed.2d 935 (1959) (holding that "presumptions (and their effects) and burden of proof are 'substantive' " rather than procedural). Furthermore, Congress explicitly has attempted to accommodate the goals of the federal bankruptcy system and tax collection by way of the Bankruptcy Code. The code empowers the bankruptcy court to hear related tax cases, *see* 28 U.S.C. § 157 *and* 11 U.S.C. § 505, and in liquidation cases such as the one before us it establishes a scheme for distributing the proceeds of the bankruptcy estate in which the priority of tax claims has, over the years, been changed in accordance with congressional preferences, *see Nicholas v. United States*, 384 U.S. 678, 682 n. 10, 86 S.Ct. 1674, 1679 n. 10, 16 L.Ed.2d 853 (1966) (noting that at one time, tax claims had "absolute priority" in bankruptcy, but in 1938, Congress amended the Act by reducing their priority status and "requiring tax claims to be proved in the bankruptcy proceeding *like ordinary debts*") (dictum) (emphasis added). In contrast, no portion of the Bankruptcy Code expresses a policy or intent to replace any aspect of the federal tax law with any special legal requirement to be applied only in the context of a bankruptcy proceeding. *Cf.* H.R.Doc. No. 137, 93d Cong., 1st Sess., Pt. I, 92 (1973) (recognizing the need to create a bankruptcy system which obviates criticism based on the "ground which involves the different results likely to be obtained in bankruptcy courts and nonbankruptcy courts").

Thus, upon review of the code and its legislative history, we find nothing

which suggests that this dispute between a taxpayer and the IRS should be decided in a manner any different from that in which the case would be determined outside the bankruptcy context. This would also appear to be the view of most of the courts of appeals that have addressed the issue. *See Resyn Corp. v. United States,* 851 F.2d 660, 662–63 (3rd Cir.1988); *United States v. Uneco, Inc. (In re Uneco, Inc.),* 532 F.2d 1204, 1207 (8th Cir.1976). *But see, California State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fidelity Holding Co., Ltd.),* 837 F.2d 696, 698 (5th Cir.1988) (shifting burden to state taxing authority and, in dictum, suggesting similar result with respect to the IRS). While the IRS thus bears the burden of proving its claim for taxes owed, *see Cebollero v. Commissioner,* 967 F.2d 986, 989–90, 92–2 U.S. Tax Cas. (CCH) ¶ 50,327 (4th Cir.1992), this burden does not impose on it the obligation to determine and allow deductions to the taxpayer. As a matter of legislative grace, deductions may be claimed and are allowed to the extent *the taxpayer* can prove them, whether the taxpayer is a debtor in bankruptcy or not.

In this case, the IRS sustained its burden of proving that the taxpayer realized taxable income in the years 1982–85 by conducting an audit and filing, with the consent of the taxpayer, a Form 870 which operates as a tax return for those years. While not required to do so on its own initiative, the IRS allowed the taxpayer deductions in those years for reasonable amounts added to a bad debt reserve as authorized by 26 U.S.C. § 166(c). If the trustee preferred to claim on behalf of the estate bad debt deductions based on actual losses sustained, he was required to provide proof about the losses, including the year within which they were sustained, as required by 26 U.S.C. § 166(a). On his inability to provide that proof, the bankruptcy trustee cannot rewrite the Tax Code to entitle the estate to a deduction on an equitable basis.

■■■ The bankruptcy court is a court of equity. *See EEE Commercial Corp. v. Holmes (In re ASI Reactivation, Inc.),* 934

F.2d 1315, 1321 (4th Cir.1991). But that status does not confer on the court unlimited authority to ignore plain statutory requirements and to alter the substantive rights of the parties. *See INS v. Pangilinan,* 486 U.S. 875, 883, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988) (" 'Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.' ") (quoting *Hedges v. Dixon County,* 150 U.S. 182, 192, 14 S.Ct. 71, 74, 37 L.Ed. 1044 (1893)); *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

· There do exist equitable doctrines available for use in those extraordinary cases in which a manifest injustice would result if established legal principles were to be applied. For instance, we have recognized that, in certain situations, the doctrine of equitable subordination may be invoked by the bankruptcy court in order to protect creditors in a manner that is consistent with the overall bankruptcy scheme. *See ASI Reactivation, Inc.,* 934 F.2d at 1321. Some courts have invoked that doctrine to subordinate federal tax penalties to the claims of other unsecured creditors of the estate. *See Schultz Broadway Inn v. United States,* 912 F.2d 230, 232–34 (8th Cir.1990); *In re Virtual Network Servs. Corp.,* 902 F.2d 1246, 1247–50 (7th Cir. 1990). *But cf., United States v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.),* 942 F.2d 1055, 1061–1062 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992). But to *disallow* the claim of the IRS in this case goes well beyond the bounds of equity, for even the trustee does not argue that it would be unfair to the *debtors* to disallow the tax deductions in this case. Because the debtors would be entitled to any proceeds remaining in the bankruptcy estate after the appropriate distribution is made, *see* 11 U.S.C. § 726, it is difficult to imagine a situation in which equity would completely refuse, rather than subordinate, a legally sufficient claim which worked no

unfairness upon the debtor in bankruptcy. In this case, the debtors made incomplete, false, and fraudulent statements in an attempt to hide the fact that the loans given by them and sold to others were of little value and, pursuant to this scheme, financial records which would otherwise be available to determine the point at which the loans went bad were not available. Therefore, we reject the contention that equitable principles justify reallocation of their bad debt losses in a manner which completely negates the IRS's claim against the estate.

■ Perhaps the courts below justifiably were influenced by the perceived effect of the tax claims upon the other creditors of the estate, many of whom it would appear were victims of the debtors' fraud. In deciding the case as they did, these courts were undoubtedly concerned with the apparent unfairness arising from the fact that the IRS, in essence, is attempting to assess a substantial sum of money in penalties and interest against these creditors rather than against the taxpayers. However, as discussed above, where equity in distribution of the estate solely is concerned, subordination rather than disallowance of a claim is the proper remedy to be considered. *See ASI Reactivation, Inc.,* 934 F.2d at 1321. We of course make no determination as to the appropriateness of the application of equitable subordination on the facts of this case, as such decisions are best left in the first instance to the considered judgment of the bankruptcy court.

In summary, it is our view that in providing for the consideration of tax claims in the bankruptcy courts Congress did not intend implicitly to amend the tax law regarding the availability of deductions for bad debts and that considerations of equity do not provide a basis for disallowing the government's claim under these circumstances. Accordingly, we reverse the decisions below insofar as they allowed the trustee to utilize the actual debt accounting method to reallocate bad debt losses, for which the trustee was unable to meet his burden under the federal Tax Code, and remand for further proceedings.

REVERSED AND REMANDED.