**In re Jon R. FORD and Patricia J. Ford, Debtors.**

**No. C2–94–322.**

United States District Court,
S.D. Ohio,
Eastern Division.

Dec. 26, 1995.

Edmund A. Sargus, Jr., United States Attorney, Brenda L. Dodrill, Assistant United States Attorney, Columbus, Ohio, and W. Stephen Muldrow, Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for appellant United States.

Joseph C. Winner, McFadden, Winner and Savage, Columbus, Ohio, for appellees Jon R. Ford and Patricia J. Ford.

1. Trust fund taxes "are social security and federal income taxes that an employer withholds from the pay of employees. An employer holds these funds in trust for the United States." *In re A & B Heating & Air Conditioning, Inc.,* 861 F.2d 1538, 1538 n. 1 (11th Cir.1988) (citing 26 U.S.C.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

This appeal arises out of the collection and payment of trust fund taxes by a corporation, Village Junction Restaurant, Inc., formerly owned by Jon Ford. Mr. Ford, the sole shareholder, was responsible for collecting and remitting the trust fund taxes to the Internal Revenue Service. Believing that these taxes had not been paid in full following the sale of the corporation in August 1986, the IRS assessed a penalty against Mr. Ford in March 1988 [1] and later, in January 1993, filed a proof of claim in the Ford's chapter 11 bankruptcy proceeding listing the penalty and interest on that penalty as claims.

The Fords objected to the proof of claim. After a hearing on the matter, the bankruptcy court issued an order disallowing the IRS's claim to the extent it related to the penalty and interest assessed against Mr. Ford. A disallowed claim "may not share in the distribution of the debtor's assets in bankruptcy." *Hawxhurst v. Pettibone Corp.,* 40 F.3d 175, 179 (7th Cir.1994). The IRS appeals the bankruptcy court's decision.

### I. Facts

Village Junction Restaurant, Inc., located at 39 E. Main St., Columbus, Ohio, began operation in 1981. (Transcript of hearing, p. 19–20.) Mr. Ford was not always timely in filing the returns for the employment taxes that were due; he estimated that as a result he had paid approximately $71,000.00 in penalties and interest to the IRS as of the date of the hearing. (*Id.* at 32–33.) Because of a lack of business, Mr. Ford closed the restaurant in June 1986 and sold the property two months later to Wendy's International, Inc. (*Id.* at 20–21.) The closing on the sale was held August 6, 1986. (*Id.* at 21.)

Mr. Ford's belief was that all the outstanding tax liabilities of Village Junction Restaurant, Inc. would be fully paid from the pro-

§ 7501). Persons responsible for the collection and payment of these taxes are "personally liable to a penalty equal to the amount of [any] delinquent taxes," *Slodov v. United States,* 436 U.S. 238, 245, 98 S.Ct. 1778, 1784, 56 L.Ed.2d 251 (1977), under 26 U.S.C. § 6672.

ceeds from the sale of the property. (*Id.* at 22.) He testified that Bank One had a lien on everything he owned but had agreed to allow the IRS to be paid so that he "wouldn't have that battle to fight." (*Id.*) He further testified that a representative from the IRS, a man named John Leyshon, was present at the closing and that Mr. Leyshon (after placing a telephone call to Cincinnati to "make sure he knew all the numbers") left that day with a check for $30,469.09. (*Id.*) The closing statement itself, admitted into evidence at the hearing, shows a payment to the IRS in the amount of $30,469.09.

The IRS apparently did not believe that the proceeds from the sale of Village Junction Restaurant, Inc. were sufficient to cover all its outstanding tax liabilities. Shortly after the closing, a representative from the IRS told Mr. Ford that his automobile was going to be repossessed unless he paid approximately $8,600.00 to the IRS. (*Id.* at 24). Mr. Ford paid the amount due and wrote the IRS asking for an accounting. (*Id.*) The IRS sent him thirty-two pages of computer printouts (but no explanation, particularly with respect to the $30,469.09 payment it had previously received) and later sent him additional bills for interest on the taxes the IRS contended were still due. (*Id.* at 24–25.) Thereafter, Mr. Ford struggled to pay his prior and current[2] tax liabilities. (*Id.* at 26.)

On March 21, 1988, the IRS assessed a penalty against Mr. Ford in the amount of $28,392.50, contending that he was responsible for the trust fund taxes collected by Village Junction Restaurant, Inc. Mr. Ford made payments of $11,839.09 in 1989 and $101.39 in 1990 but was never able to fully satisfy the penalty assessed against him. (*Id.* at 57–58; Government's Exhibit 2). On July 11, 1991, the Fords filed a petition for relief under chapter 11 of the bankruptcy code. The IRS filed an amended proof of claim for $58,732.90, an amount comprised of a number of items.[3] Included within the total amount was a claim for the unpaid balance of the penalty assessed against Mr. Ford (the balance, according to the proof of claim, was $16,457.02) and a claim for interest on the unpaid balance of the penalty (the interest, according to the proof of claim, was $8,612.18).

The Fords objected to the inclusion of a number of items on the IRS's proof of claim and to the exclusion of others. However, only one item—the claim for $8,612.18 in interest on the penalty assessed against Mr. Ford—is at issue in this appeal.[4] The Fords conceded that penalty itself was correct, stating that "[t]he principal amount of $16,457.02 attributable to the payroll taxes of Village Junction, Inc. is a proper claim against Jon Ford." (Objection to Claim of Internal Rev-

---

**2.** Mr. Ford also owned a corporation called Hungry Jack, Inc., which had its own trust fund taxes to collect and remit to the IRS. (Transcript of Hearing, p. 23–24.)

**3.** The total amount of the claim is comprised of these items: (1) a penalty on the unpaid payroll taxes of Village Junction, Inc. in the amount of $16,457.02, plus $8,612.18 in interest; (2) income taxes for 1990 in the amount of $9,117.00, plus $219.89 interest; (3) an estimated penalty on the unpaid payroll taxes of Hungry Jack, Inc. in the amount of $24,190.05; and (4) an unidentified penalty in the amount of $136.76.

**4.** All but one of the Ford's objections (the one at issue in this appeal) were resolved either by agreement of the parties or by decision of the bankruptcy court. The Fords objected to the claim for 1990 income taxes on the ground that the amount of the claim improperly failed to reflect credits due on their 1986, 1987, 1988, and 1989 tax returns. Pursuant to an agreement between the parties, the bankruptcy court or-

dered that the Fords were entitled to set off the refunds due on their 1988 and 1989 tax returns. (September 13, 1993 order.) In an order entered January 18, 1994, the bankruptcy court held that the Fords were not entitled to a setoff for the refunds due on their 1986 and 1987 tax returns; the Fords did not appeal this decision. With respect to the claim for a penalty on payroll taxes allegedly owed but not paid by Hungry Jack, Inc., the bankruptcy court held that, pursuant to an agreement between the parties, the claim would not receive a distribution in the Ford's chapter 11 proceeding and that Mr. Ford would not receive a discharge for any penalty that may later be assessed against him should Hungry Jack, Inc. fail to pay these taxes. (September 13, 1993 order.) The bankruptcy court also held in the September 13, 1993 order that the Fords were not entitled to a setoff for the failure of the IRS to pursue a levy served upon Bank One, Columbus, N.A.; the Fords did not appeal this decision. The Fords did not object to the unidentified penalty in the amount of $136.76.

enue Service, p. 2). They did, however, object to the $8,612.18 in interest, arguing that "this amount is overstated and may fail to reflect payments made." (*Id.*) Thus, in this respect, the Fords, in essence, challenged the interest assessed against Mr. Ford.

Counsel for the Fords explained that the Fords objected to the amount of interest because the IRS could not explain how it applied the $30,469.09 it had received from the proceeds of the sale of Village Junction Restaurant, Inc.[5] (Transcript of hearing, p. 9.) As a result, it was inappropriate, counsel argued, for the IRS to charge interest on the penalty assessed against Jon Ford. The IRS conceded that it could not explain how the $30,469.09 payment was applied. (*Id.* at 15.) It argued, however, that $30,469.09 was insufficient to have extinguished Village Junction Restaurant, Inc.'s tax liabilities and that the penalty and interest assessed against Mr. Ford in March 1988 were accurate. (*Id.* at 71–72.)

In disallowing the IRS's claim, the bankruptcy court explained at the conclusion of the hearing:

[I]t seems to me the Debtor did all the Debtor could do in terms of defeating the prima facie evidence validity of their claim based on that amount. It was then incumbent on the Internal Revenue Service to show that despite that credit, an amount remained owing, and I don't have that evidence.

The evidence is that the IRS thinks a certain amount is still owing, but there's never been any indication of where the credit was made. I think there must have been some mistake. Whether the credit was made in the wrong place or wasn't made, I don't know. But I think that this

Debtor has asked and tried to find out, and all he's doing is getting deeper.

(*Id.* at 73–74.)

In accordance with the foregoing statement, the bankruptcy court held in an order entered September 13, 1993 that the IRS "failed to carry its burden of proof that *any amount* remain[ed] owing attributable to the payroll taxes of Village Junction Restaurant, Inc." (September 13, 1993 order) (emphasis added.) The bankruptcy court also directed the parties to submit briefs on a second issue, *i.e.,* whether the Fords were entitled to a setoff or credit for refunds due on their 1986 and 1987 personal income tax returns. The court decided this issue in an order entered January 18, 1994, holding that the Fords were not entitled to a setoff or credit. The Fords did not appeal this decision.

## II.  Timeliness of this Appeal

■ The Fords, appellees, argue that the IRS waited too long to file its notice of appeal and that, as a result, the Court lacks jurisdiction over this appeal. *See In re Colon,* 941 F.2d 242, 245–46 (3d Cir.1991) ("a late filing is insufficient to vest the district court with jurisdiction of the appeal"). They contend that the September 13, 1993 order was a final appealable order. As a result, they argue, the IRS was required to file a notice of appeal within ten days of the date of this order.[6] The IRS did not do so, waiting instead until January 28, 1994 to file a notice of appeal.

The IRS argues that the September 13, 1993 order was not a final appealable order because it did not resolve all the issues raised in the Ford's objection to the IRS's proof of claim. The IRS points out that the

---

5. Counsel for the Fords speculated that the payment was applied toward penalties and interest rather than taxes. (Transcript of hearing, p. 9.) The IRS speculated that the payment was applied in the order in which the tax liabilities arose (the oldest being paid first), but it was unable to confirm this because the accounts related to the earliest periods were closed out as uncollectible. (*Id.* at 16.) What is certain is that at the hearing no one could explain how the payment was applied.

After the hearing, the IRS determined that the payment was applied to the tax liabilities of Hun-

gry Jack, Inc., perhaps because the August 6, 1986 closing statement listed it as the seller and not Village Junction Restaurant, Inc. This information, however, is not part of the record on appeal and therefore will not be considered by the Court.

6. Bankruptcy Rule 8001(a) provides that "[a]n appeal from a final judgment, order, or decree of a bankruptcy judge to a district court ... shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002." The time allowed is ten days. Bankr.R. 8002.

issue whether the Fords were entitled to a setoff or credit for the refunds due on their 1986 and 1987 income tax returns was left unresolved in the September 13, 1993 order. The bankruptcy court decided this issue in an order entered January 18, 1994. And it is this order and not the September order, argues the IRS, that made the bankruptcy court's resolution of the dispute between the Fords and the IRS final and appealable.

The timeliness of the IRS's notice of appeal turns on whether the September 13, 1993 order was final under the provisions of 28 U.S.C. § 158(a), which authorizes district courts to hear appeals of decisions of bankruptcy courts. The statute provides, "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges." 28 U.S.C. § 158(a). "A final decision is generally 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *In re The Charter Co.*, 778 F.2d 617, 621 (11th Cir.1985) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). "In bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that must have been finally resolved, rather than the entire bankruptcy litigation." [7] *Id.* (citations omitted). "Although courts 'take a more liberal view of what constitutes a separate dispute for purposes of appeal' in bankruptcy cases, the separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do." *Id.* (quoting *In re Leimer*, 724 F.2d 744, 745 (8th Cir.1984)) (citations omitted).

██ In the present case, the dispute before the bankruptcy court centered on the Ford's objection to the proof of claim filed by the IRS. The Fords objected to the amount of the claim on a number of grounds. In their opinion, certain items were improperly included (*e.g.*, $8,612.18 in assessed interest); others were improperly excluded (*e.g.*, credits for refunds due on their 1986 and 1987 income tax returns). The September 13, 1993 order did not address the issue whether the Fords were entitled to a credit for refunds due on their 1986 and 1987 income tax returns. Thus the order did not "leave nothing more for the bankruptcy court to do." The court was, however, left with nothing more to do—at least as far as the dispute over the IRS's proof of claim was concerned—after issuing its January 18, 1994 order. As a result, the IRS had ten days from the date of this order to file a notice of appeal. The IRS did so, and thus this Court has jurisdiction to hear this appeal.

### III. Issues

The IRS, appellant, raises the following issues in its appeal:

1. Whether the bankruptcy court erred in finding that the Fords had rebutted the prima facie correctness of the IRS's proof of claim.

2. Whether the bankruptcy court erred in placing the burden on the IRS to prove that the liability set forth in its proof of claim had not been satisfied.

3. If not, whether the bankruptcy court erred in finding that the IRS did not prove the correct amount of its claim.

### IV. Discussion

#### A. The Prima Facie Correctness of the Proof of Claim

Bankruptcy Rule 3001(f) provides that a properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." As a result, a claim filed under 11 U.S.C. § 501 is deemed allowed absent an objection. 11 U.S.C. § 502(a). If an objection is filed, the objecting party must, pursuant to Fed.R.Evid. 301

---

7. The reason for this rule was explained by the court in *In re Kilgus*, 811 F.2d 1112, 1116 (7th Cir.1987):

> We tolerate these appeals in part because of the need to tie up the many subsidiary matters that litter the road to the distribution of assets in bankruptcy. A court cannot wait until the end of the case to allow the appeal, because final disposition in bankruptcy (the plan, distribution, and discharge) depends upon prior, authoritative disposition of subsidiary disputes. The separable disputes that can be handled as individual cases may be dealt with as they arise, the better to advance the end of the whole bankruptcy case.

(made applicable to bankruptcy proceedings by Bankr.R. 9017), produce evidence to rebut or meet the presumptive correctness of the proof of claim.[8] The burden of proof, however, in the sense of the risk of nonpersuasion, "remains on the party on whom it was originally cast." Fed.R.Evid. 301.

■ At the hearing, the bankruptcy court found that the Fords had presented sufficient evidence to rebut the prima facie correctness of the IRS's proof of claim. (Transcript of hearing, p. 40.) The evidence, the IRS explains, was the testimony of Mr. Ford that the $30,469.09 payment received by the IRS could have been applied to the liability set forth in its proof of claim and, if it had been, the liability could have been satisfied. (Brief of Appellant, p. 4.) The IRS argues that Mr. Ford was merely speculating and that his testimony was therefore insufficient to rebut the prima facie correctness of its proof of claim. (*Id.*)

■ In deciding whether the bankruptcy court erred in finding that the Fords had offered sufficient evidence to rebut the prima facie correctness of the IRS's proof of claim, the Court will apply the clearly erroneous standard of review. *In re Placid Oil Co.,* 988 F.2d 554 (5th Cir.1993). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

The Court cannot say, with a definite and firm conviction, that the bankruptcy court made a mistake in finding that the Fords had produced sufficient evidence to rebut the prima facie correctness of the IRS's proof of claim. The evidence showed that the IRS received a $30,469.09 payment in August 1986. Mr. Ford testified that this payment was intended to pay in full the tax liabilities of Village Junction Restaurant, Inc. His testimony is supported by the conduct of the

IRS representative at the closing—Mr. Leyshon called Cincinnati to "check the numbers" and left the closing with a check written to the penny. Mr. Ford's testimony, coupled with the fact that the IRS could not explain what happened to a payment it admittedly received, was sufficient to call into question the accuracy of the IRS's proof of claim. The bankruptcy court did not make a mistake, therefore, in requiring the party with the burden of proof (*i.e.,* the party who bore the risk of nonpersuasion) to go forward with its evidence.

### B. The Burden of Proof

■ The question, then, is whether the bankruptcy court erred, as a matter of law, in placing the burden of proof on the IRS. Neither the bankruptcy rules nor the bankruptcy code answers this question. The code contains no provision allocating the burden of proof in a case in which an objection to a federal tax claim is at issue. 1A Collier on Bankruptcy ¶ 12.03[5] (15th ed.) And Bankruptcy Rule 3001(f), the only rule arguably applicable, "does not, in a technical sense, allocate burden of proof. The Rule simply establishes that a proof of claim constitutes evidence." *In re Cobb,* 135 B.R. 640, 641 (Bankr.D.Neb.1992).

The IRS argues that in a case in which the IRS has issued a valid assessment, "the ultimate burden of proof and persuasion, by a preponderance of the evidence, rests with the debtor." (Brief of Appellant, p. 23.) It acknowledges that courts are split on the burden-of-proof issue in cases in which no assessment has been issued. *See* 1A Collier on Bankruptcy ¶ 12.03[5] (15th ed.). The IRS contends, however, that these cases are inapplicable, because in the present case the IRS issued an assessment, one to which Mr. Ford did not object. (Brief of Appellant, p. 20.) The IRS further contends that in cases in which an assessment has been issued, the "courts have squarely indicated that . . .

8. Fed.R.Evid. 301 provides:

In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet

the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

there is no shifting of the burden of proof to the United States." (Appellant's Reply Brief, p. 8.)

■ The Fords argue that in a bankruptcy proceeding the burden of persuasion is always on the claimant, even when the claimant is the IRS. (Brief of Appellees, p. 8.) This is so, they argue, because the bankruptcy code does not distinguish claims of the government from claims of private persons. The government, therefore, should be treated like all other claimants, who always bear the burden of proof when the prima facie effect of their proofs of claim has been rebutted.[9] In support of their argument, the Fords cite *In re Highway Construction Co. of Ohio*, 105 F.2d 863 (6th Cir.1939) (no tax assessment; claim by Industrial Commission of Ohio for unpaid payroll premiums required to be paid into the State Insurance Fund; burden of proof on the Commission, the claimant); *In re Fidelity Holding Co. Ltd.*, 837 F.2d 696 (5th Cir.1988) (no assessment issued; burden on state of California, claimant, to prove claim for taxes); (*In re Premo*, 116 B.R. 515 (Bankr.E.D.Mich.1990) (no assessment issued; burden on IRS, claimant, to prove claim); and *In re Butcher*, 100 B.R. 363 (Bankr.E.D.Tenn.1989) (same).[10]

■ A common view in many of the cases—and one the Court adopts in the present case—is that the burden-of-proof rules applied in non-bankruptcy proceedings should also be applied in bankruptcy proceedings. This view, expressed in cases cited by the Fords and the IRS, is based on the fact that there is "nothing in the plain language of the bankruptcy code that expresses an intent to alter the burdens of proof or persuasion in the context of a disputed claim against the bankruptcy estate." *In re Landbank Equity Corp.*, 973 F.2d 265, 269–70 (4th Cir.1992) (district court erred in holding that bankruptcy rule 3001(f) shifted burden of

proof from trustee to IRS in case involving deductibility of bad debt losses). Specifically, with respect to disputed tax claims, "no portion of the Bankruptcy Code expresses a policy or intent to replace any aspect of the federal tax law with any special legal requirement to be applied only in the context of a bankruptcy proceeding." *Id.* at 270. There is, in sum, nothing in the bankruptcy code or its legislative history "which suggests that [a] dispute between a taxpayer and the IRS should be decided in a manner any different from that in which the case would be determined outside the bankruptcy context." *Id.* at 270–71.

If this dispute between the Fords and the IRS had not arisen in the context of a chapter 11 bankruptcy proceeding, the burden would have been on Mr. Ford, the taxpayer, to prove by a preponderance of the evidence that the interest assessed against him was incorrect. "[T]he usual procedure for the recovery of debts is reversed in the field of taxation ... and the burden of proof, normally on the claimant, is shifted to the taxpayer." *Bull v. United States*, 295 U.S. 247, 260, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935). An assessment "is presumed to be correct." *Sinder v. United States*, 655 F.2d 729, 731 (6th Cir.1981). The burden on the taxpayer to show otherwise "is not merely a burden of producing evidence; it is a burden of persuasion by a preponderance of the evidence that the assessment is not correct." *Id.; see also Ruth v. United States*, 823 F.2d 1091, 1093 (7th Cir.1987) ("the taxpayer must bear the risk of nonpersuasion as to all the issues presented by a section 6672 assessment case"). For the reasons expressed by the court in *Landbank Equity* and as a matter of fairness (burden-of-proof rules should be applied equally to debtors and non-debtors alike), the foregoing rules should not be reversed merely because a dispute over an

---

9. As a general rule the burden of proof is on the claimant because "a claimant in a bankruptcy proceeding is in the same posture as a civil plaintiff in a non-bankruptcy proceeding, who generally is assigned the burden of proving its claim against the defendant *under non-bankruptcy law.*" *In re Premo*, 116 B.R. 515, 518 (Bankr. E.D.Mich.1990) (citations omitted) (emphasis added).

10. The other case cited by the Fords is not on point. They cite *United States v. Arnold*, 878 F.2d 925, 925 (6th Cir.1989), which addressed an issue concerning "the proper interest rate payable to the United States as creditor through the Farmers Home Administration."

assessed penalty and interest arises in the context of a bankruptcy proceeding.

### Conclusion

For the foregoing reasons, the court holds that the bankruptcy court erred in requiring the IRS to prove the existence and the amount of its claim insofar as it relates to the penalty ($16,457.02) and interest ($8,612.18) assessed against Mr. Ford. The decision of the bankruptcy court is therefore **REVERSED,** and this case is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**