**In re Dorothy Ann SAUNDERS, Debtor.**

**Bankruptcy No. 90–01619.**

United States Bankruptcy Court,
W.D. Virginia,
Lynchburg Division.

July 20, 1993.

William K. Rounsborg, Trial Atty., Tax Dept., U.S. Dept. of Justice, Washington, DC, for the IRS.

R. Mitchell Garbee, Wilson, Garbee and Rosenberger, Lynchburg, VA, for Dorothy Ann Saunders.

## MEMORANDUM OPINION

WILLIAM E. ANDERSON, Chief Judge.

Before the court for decision is an objection filed by the debtor to the amended claim filed in this action by the Internal Revenue Service.

### FACTS

The debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on October 30, 1990. The proceeding was subsequently converted to one under chapter 11. On December 3, 1990, the Internal Revenue Service filed a proof of claim in the amount of $15,659.31, listing income taxes, interest and penalties due for the tax years ending on December 31, 1984 and 1986. On February 25, 1991, the IRS amended its claim to include taxes, interest and penalty for the tax year ending December 31, 1987. The amendment was based on the results of an audit performed by the IRS which showed that the debtor owed $20,328.00 more in 1987 taxes than she showed on her return for 1987. As amended, the total IRS claim was for $58,036.19.

On January 13, 1992 the debtor filed an objection to the amended claim on the grounds that it was "excessive." Although the IRS made changes to many items on her 1987 tax return based on the audit, the debtor contests only the determination that she was not entitled to a casualty loss deduction resulting from the theft of certain items of jewelry. The casualty loss claimed by the debtor on her 1987 return was based on the theft of some jewelry which she had taken to New York City in 1987 to make arrangements to sell by auction. As a result of the theft, the debtor deducted $33,745.00 on her 1987 tax return.[1] Based on the audit, the IRS determined that the debtor was not entitled to a theft loss deduction and that she in fact realized a taxable gain on the insurance proceeds.[2]

The debtor worked as an insurance broker for approximately twenty years until health problems caused her to retire. She testified that she had purchased the jewelry in question at various times over the years for investment purposes and not for her personal use. She kept the jewelry in a safe at her home where she had installed a security system. The debtor also testified that she had owned a gift shop in Washington, D.C. in the 1950's in which she sold fine jewelry. Based on her gift shop experience and her experiences purchasing her own jewelry, the debtor testified that she became a good judge of fine jewelry.

After the IRS conducted the audit, the debtor hired William H. Sapp, Jr., an attorney and certified public accountant, to review her 1987 return and the audit. Mr. Sapp testified that in his opinion both the debtor and the IRS improperly calculated the theft loss. He concluded that the debtor was entitled to a deduction of $74,282.00 pursuant to 26 U.S.C. § 165(a) and the regulations promulgated thereunder based on the business nature of the loss. He cited the cost of the jewelry, its impracticality

---

**1.** The debtor's 1987 tax return was not offered as an exhibit by either party. The debtor's expert witness testified that the amount of the deduction claimed on the tax return represented the difference between the amount of the insurance proceeds received by the debtor and the fair market value of the stolen items. The debtor's insurance policy apparently only paid her 80% of the fair market value.

**2.** The Internal Revenue Service's corrected report showing the changes to the debtor's 1987 return was made an exhibit to this proceeding. The report lists the stolen items of jewelry, the insurance proceeds attributable to each item, either the cost or fair market value for each item without showing which is which, and the gain or loss for each item. Neither party explained how the IRS determined the fair market value and/or cost basis of the debtor's jewelry.

for everyday use, the debtor's background in the jewelry business, and her purchase of a security system as the basis for his opinion. In calculating the deduction, Mr. Sapp stated that he used information that he received from the debtor and from reviewing "receipts provided by the jewelers" to determine the cost of the items.[3]

## DISCUSSION

This court has jurisdiction to hear and determine the debtor's tax liability. See 28 U.S.C. § 157 and 11 U.S.C. § 505(a). The Internal Revenue Service properly filed its amended claim and the debtor's filing of an objection pursuant to Federal Rule of Bankruptcy Procedure 3007 properly initiated this action.

A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim. Fed.Rule Bank.Proc. 3001(f). Usually, "[d]espite a claim's prima facie validity, the claimant, in any objection hearing, retains the burden of persuasion. The party objecting to the claim has the burden of going forward and of introducing evidence sufficient to rebut the presumption of validity. Such evidence must be sufficient to evidence a true dispute and must have probative force equal to the contents of the claim. Upon introduction of sufficient evidence by the objecting party, the burden of proof must then be met by the claimant by a preponderance of the evidence." 8 Collier on Bankruptcy ¶ 3001.05, p. 3001–25, –26 (15th ed. 1993).

The Court of Appeals for the Fourth Circuit recently held, however, that a dispute between the IRS and a taxpayer in bankruptcy court should not be decided any differently than it would be determined outside that forum. See, In re Landbank Equity Corp., 973 F.2d 265, 271 (4th Cir. 1992). Specifically regarding a disputed tax deduction, the court held that "[w]hile the IRS thus bears the burden of proving its claim for taxes owed, ... this burden does not impose on it the obligation to determine and allow deductions to the taxpayer. As a matter of legislative grace, deductions may be claimed and are allowed to the extent the taxpayer can prove them, whether the taxpayer is a debtor in bankruptcy or not." Id. (Emphasis in original.) See, e.g., Millsap v. Commissioner, 46 T.C. 751, 759 (1966), aff'd. 387 F.2d 420 (8th Cir.1968) (taxpayer has the burden of establishing the adjusted basis for lost property); Clapp v. Commissioner, 36 T.C. 905 (1961), aff'd. 321 F.2d 12, 14 (9th Cir.1963) (the burden of proving entitlement to a deductible loss is upon the taxpayer); and Citron v. Commissioner, 97 T.C. 200, 207 (1991) (taxpayer bears the burden of proving a deductible loss).

In this case, the debtor disputes the method used by the Internal Revenue Service to compute the amount of loss resulting from the theft of jewelry which she should be allowed to claim as a deduction on her 1987 income tax return. It is not entirely clear how the debtor calculated the loss when she filed her 1987 tax return, although it appears that she deducted the difference between the fair market value of the stolen items and the amount she received for each in insurance proceeds. The IRS used each item's fair market value or cost, whichever was lower, to calculate the loss and, because the insurance proceeds exceeded the cost for some items, determined that the debtor actually recognized a taxable gain. The debtor's expert used the cost of each item to calculate the loss, resulting in a loss substantially greater than that originally claimed by the debtor on her 1987 return.

Deductions for losses not compensated for by insurance are provided for in 26 U.S.C. § 165[4] and the regulations promulgated thereunder. 26 C.F.R. § 1.165–8(a) permits the taking of a deduction from gross income of "any loss arising from

---

3. Copies of the documents and the other information the debtor provided to Mr. Sapp were not attached to his written report.

4. Section 165(a) provides that "[t]here shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise."

theft." The amount of theft loss deductible, "whether or not incurred in a trade or business or in any transaction entered into for profit," is usually the difference between the amount of insurance proceeds and the *lesser* of the fair market value of the stolen property immediately before the loss, or the adjusted basis. 26 C.F.R. § 1.165–7(b)(1).

However, if property used in a trade or business or held for the production of income is totally destroyed by casualty, and if the fair market value of such property immediately before the casualty is less than the adjusted basis of such property, the amount of the adjusted basis of such property shall be treated as the amount of the loss for purposes of section 165(a). 26 C.F.R. § 1.165–7(b)(1).

Thus the debtor must prove that her jewelry was used in a trade or business or held for the production of income in order to take a theft loss deduction measured by the adjusted basis if such basis exceeds the fair market value immediately before the theft loss.

The phrase "property used in a trade or business or held for the production of income" used in 26 C.F.R. § 1.165–7(b)(1) is not defined in the regulations establishing the deductible amount of a theft loss. An "activity not engaged in for profit" is defined at 26 C.F.R. § 1.183–2, however, in regulations promulgated pursuant to 26 U.S.C. § 183.[5] Regulation 1.183–2(b) provides, in part, as follows:

(b) *Relevant factors.* In determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account. No one factor is determinative in making this determination. In addition, it is not intended that only the factors described in this paragraph are to be taken into account in making the determination, or that a determination is to be made on the basis that the number of factors (whether or not listed in this paragraph) indicating a lack of profit objective exceeds the number of factors indicating a profit objective, or vice versa. Among the factors which should normally be taken into account are the following:

(1) *Manner in which the taxpayer carries on the activity.* The fact that the taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is engaged in for profit. . . .

(2) *The expertise of the taxpayer or his advisors.* . . .

(3) *The time and effort expended by the taxpayer in carrying on the activity.* . . .

(4) *Expectation that assets used in activity may appreciate in value.* . . .

(5) *The success of the taxpayer in carrying on other similar or dissimilar activities.* . . .

(6) *The taxpayer's history of income or losses with respect to the activity.* . . .

(7) *The amount of occasional profits, if any, which are earned.* . . .

(8) *The financial status of the taxpayer.* . . .

(9) *Elements of personal pleasure or recreation.* The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved.

The evidence relied upon by the debtor to establish that the stolen jewelry was "used in a trade or business or held for the production of income" is not persuasive. Keeping the jewelry in a safe and having an alarm system installed at home are equally as consistent with keeping the jewelry for pleasure as it is with keeping it for the production of income. Although the debtor testified that she did not wear the stolen jewelry, her testimony was contradicted by other witnesses.

The debtor did not produce records showing date of purchase, cost, and appraisals

---

**5.** Section 183 disallows deductions to individuals and S corporations attributable to activities not engaged in for profit unless otherwise allowed. *See* 26 U.S.C. § 183(a) and (b)(1).

for all or even most of the stolen items and did not explain her failure to do so. Based on the limited evidence before the court, it appears that the debtor did not maintain complete and accurate records and did not maintain them in a businesslike manner. She was not trained as a gemologist, does not have special experience in the jewelry business, and apparently did not rely on the special expertise of others in buying jewelry. There was no testimony regarding the time periods during which the stolen jewelry was acquired or how she went about acquiring most of it.

■ The debtor did not depend upon the buying and selling of jewelry as a source of income and she testified that she had never sold any jewelry. While she did state that she hoped her jewelry would appreciate in value and that she viewed the sale of the jewelry as a possible source of funds if her economic situation deteriorated, those factors do not conflict with a non-profit making purpose for ownership of the jewelry. She did not show how her belief that her jewelry would appreciate in value differs from the expectations that most people have that their homes, art, silver, or pieces of antique furniture will appreciate. Such expectations do not make ownership of such items an activity engaged in for profit however.

Several documents introduced into evidence also indicate that the jewelry was not primarily acquired as a profit making endeavor. The proof of loss form which the debtor filed with her insurance company after the jewelry was stolen states that many of the stolen items were family heirlooms. In a complaint which she filed regarding her insurance company with the State Corporation Commission, she stated that "many jewelers have seen my jewelry while I was wearing it" and noted that some of the pieces had belonged to her mother. Although the debtor testified that none of the items of jewelry for which she claims a theft loss deduction were family pieces, the proof of loss and complaint which she prepared seemingly indicate otherwise.

For the foregoing reasons the court concludes that the jewelry was not "property used in a trade or business or held for the production of income" as used in 26 C.F.R. § 1.165–7(b)(1). Therefore the debtor was only entitled to a theft loss deduction, if any, calculated using the lesser of a stolen item's cost or fair market value.

■ The debtor did not sustain her burden of showing that she was entitled to any theft loss deduction. The Internal Revenue Service Corrected Report disallowed the entire theft loss deduction claimed by the debtor on her 1987 return, indicating that the insurance proceeds which the debtor received for her stolen jewelry exceeded the total of the lower of the cost or fair market value of the items stolen.[6] In the letter he prepared for debtor's counsel, Mr. Sapp, her expert, lists the cost for eleven items of jewelry. Six of the items listed in the letter are the same as items listed in the IRS Corrected Report and on the forms the debtor submitted to her insurance company. One of the items listed in the letter is an item which is shown as not being stolen on the insurance form. Four of the items listed in the letter seemingly do not appear on the IRS Corrected Report and are not listed in the insurance forms. The letter indicates that no insurance proceeds were received for those four items. Although he testified that the information he used in preparing his letter was obtained from the debtor, Mr. Sapp did not explain why his list of stolen items is substantially different than the list in the IRS Corrected Report or the list submitted to the insurance company. The debtor also did not explain the apparent inconsistency. Aside from Mr. Sapp's letter and testimony, the

---

6. Three of the amounts listed on the Corrected Report in the column labeled cost/FMV correspond to the appraised values which the debtor set forth on the list provided to her insurance company. See Exhibits A and B. The other six items on the IRS report show a cost/fmv amount which is less than the appraised amounts on the list furnished to the insurance company. The three items where IRS figure corresponds to the debtor's appraisal figures shown on Exhibits A and B are the three items on which the debtor is said to have realized a gain, resulting in a net gain instead of a theft loss.

debtor offered no evidence from which the amount of the deduction for her theft loss could be determined. This court therefore finds that the debtor did not sustain her burden of establishing that she is entitled to a theft loss deduction on her 1987 tax return and the debtor's objection to the claim filed by the Internal Revenue Service is overruled.

■ One final matter needs to be addressed. In the memorandum filed on behalf of the IRS in this matter, the United States argues, based on information it believes was established at the trial,[7] that the IRS should be allowed to amend its proof of claim because the debtor filed a false return and willfully attempted to evade taxes.[8] As noted in the memorandum, the government bears the burden of proof on these issues. Because the fraud and willful intent issues were not raised prior to or during the trial held in this matter, the court believes that it was improper to raise them in the post-trial memorandum. In any event, after carefully reviewing the record, the court finds that the United States did not prove that the debtor committed fraud or willfully intended to evade taxes. While the debtor's testimony regarding the source and cost of several items of jewelry was confusing and contradicted by that of several other witnesses, such evidence was not sufficient to meet the IRS's burden of establishing fraud or willful intent.

### CONCLUSION

For the foregoing reasons, an order will be entered overruling the debtor's objection to the amended claim filed in this proceeding by the Internal Revenue Service.

---

7. The facts which allegedly establish that the debtor filed a fraudulent return and willfully attempted to evade taxes concern a controversy between the debtor and an antique dealer regarding payment for an item of jewelry. The government alleges that the item in question is one of those stolen and that the debtor actually paid nothing for it. If the government had used a basis of $0 instead of the $35,000.00 appraised value in determining the debtor's tax liability, she would have recognized an even higher gain thereby increasing her tax liability.

8. 26 U.S.C. § 6501(a) generally requires that a tax be assessed within three years after a return is filed. 26 U.S.C. § 6501(c)(1) and (2) create exceptions to the three year limitation in cases where a false or fraudulent return is filed with the intent to evade tax or where there is otherwise a willful attempt to defeat or evade the imposition of a tax.