**TIDEWATER FINANCE COMPANY,**
Appellant,

v.

**Steven HENSON, Appellee.**

**Tidewater Finance Company,**
Appellant,

v.

**Karen U. Smith, Appellee.**

**Civ. A. Nos. CCB–01–1056,
CCB–01–1057.**

United States District Court,
D. Maryland.

Dec. 31, 2001.

Jon Alexander Hoppe, Hafey and Hoppe PLC, Rockville, MD, for Tidewater Finance Company.

Richard S. Patterson, Law Office of Richard Patterson, Baltimore, MD, for Steven Henson.

Isaiah Dixon, III, Isaiah Dixon, III, P.A., Towson, MD, for Karen U. Smith.

## MEMORANDUM

BLAKE, District Judge.

This is an appeal from an order of the bankruptcy court denying Tidewater Finance Company's request for payment as an administrative expense under 11 U.S.C. § 503(b).[1] Jurisdiction is proper under 28 U.S.C. § 158(a); *see also* Fed.R.Bankr.P. 8001, 8002; Local Rule 403 (D.Md.2001). The motions have been fully briefed, and a hearing was held on November 16, 2001, *see* Fed.R.Bankr.P. 8012. For the reasons set forth below, the order of the bankruptcy court will be affirmed.

## BACKGROUND

On November 28, 1998, Karen Smith ("Smith" or the "debtor") and the Roomstore Furniture Company entered into a Consumer Credit Retail Installment Contract and Security Agreement in which Smith purchased seven items of furniture, and pledged the furniture as collateral for any monies unpaid. (Smith Doc. 14, Ex. A.) As the assignee under that contract, Tidewater Finance Company ("Tidewater") holds a purchase money security interest in the furniture. (*Id.*) In November 1999, Smith petitioned for Chapter 13 bankruptcy. (Smith Doc. 1.) Her Chapter 13 plan proposed, *inter alia,* to pay Tidewater $ 311.62 due in arrearage and $97.38 per month until the debt was paid in full. (Smith Doc. 3.) The plan was confirmed by order on March 28, 2000. (Smith Doc. 11.) Smith failed to pay any of the monthly installments due under the plan during the thirteen month interval between November 1999 and December 2000. (*See* Smith Doc. 14.)[2]

At no time before, during, or after Smith's default did Tidewater move for relief from the automatic stay pursuant to 11 U.S.C. § 362 or for adequate protection pursuant to 11 U.S.C. § 363. On December 26, 2000, however, Tidewater requested payment as an administrative expense. Bankruptcy Judge E. Stephen Derby denied Tidewater's request on February 27, 2001. (*See* Smith Doc. 16.) On March 8, 2001, Tidewater filed a notice of appeal in the United States District Court of Mary-

1. This court approved the consolidation of *Tidewater v. Henson,* No. CCB–01–1056 (D.Md.) and *Tidewater v. Smith,* No. CCB–01–1057 (D.Md.) on May 17, 2001. On October 15, 2001, the underlying bankruptcy action in *Henson,* No. 00–50470SD, was dismissed by the bankruptcy court due to a material default by the debtor with respect to the terms of the confirmed Chapter 13 plan. The only difference between the *Henson* and *Smith* cases is the nature of the collateral in which Tidewater has an interest (*Henson* involves computer hardware and *Smith* involves furniture). Thus, the dismissal of *Henson* does not affect this court's consideration of the issues presented by *Tidewater v. Smith.*

2. The facts of Steven Henson's case are similar in all relevant respects. On April 6, 1998, Mr. Henson entered into a Consumer Credit Retail Installment Contract and Security Agreement with Access 1 Computers in which he purchased a personal computer and software, and pledged the merchandise as collateral. Henson agreed to pay the purchase price of the computer in installments of $105.91 for 36 months. (Henson Doc. 7.) As the assignee under the contract, Tidewater holds a purchase money security interest in the computer and related materials. (Henson Doc. 3.) When Henson filed his Chapter 13 petition and plan on January 13, 2000, he proposed to "make all current payments to" Tidewater directly. Henson's plan was confirmed by order on April 19, 2000. (Henson Doc. 9.) Henson also failed to make the requisite payments, and Tidewater never requested adequate protection.

land pursuant to 28 U.S.C. § 158(a). (*See* Smith Doc. 17.)

### *ANALYSIS*

#### 1. *Standard of Review*

■ A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo.* *See* Fed.R.Bankr.P. 8013;[3] *First Nat'l Bank of Md. v. Stanley (In re Stanley),* 66 F.3d 664, 667 (4th Cir.1995); *In re Johnson,* 960 F.2d 396, 399 (4th Cir.1992); *Binswanger Companies v. Merry–Go–Round Enterprises, Inc.,* 258 B.R. 608, 611 (D.Md. 2001), *aff'd,* 2001 WL 1555314 (4th Cir. Dec.6, 2001). No factual findings were made by the court below. Accordingly, the court examines, *de novo,* the legal sufficiency of the bankruptcy order.

#### 2. *Section 503(b)(1)(A)*

■ "The presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among the creditors." *Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 865 (4th Cir.1994) (*quoting In re James B. Downing & Co.,* 94 B.R. 515, 519 (Bankr.N.D.Ill.1988), *citing* in turn, *Joint Indus. Bd. v. United States,* 391 U.S. 224, 228, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968)). Administrative priorities, therefore, must be narrowly construed. *Id* at 866. Tidewater's claim is an allowable administrative expense under § 503(b) if it was for "the actual, necessary costs and expenses of preserving the estate[.]" *See* 11 U.S.C. § 503(b)(1)(A).[4] In resolving § 503(b) requests, a court must observe the modifiers "actual" and "necessary"

with scrupulous care, and the creditor bears the burden of proving his claim. *In re Merry–Go–Round Enterprises, Inc.,* 180 F.3d 149, 157 (4th Cir.1999).

■ The Fourth Circuit has constructed a two-part test for determining whether an expense is an allowable § 503(b) administrative claim. First, the claim must arise from a postpetition transaction with the debtor-in-possession. *Id.* (*citing In re Stewart Foods, Inc.,* 64 F.3d 141, 145 n. 2 (4th Cir.1995)). Second, the claim must be based on consideration that is "supplied to and beneficial to" the estate. *Id.* In certain circumstances, courts have allowed a debtor's postpetition use of secured collateral acquired prior to the bankruptcy filing to satisfy the first element of this test. *See generally Dobbins,* 35 F.3d at 867 n. 7; *Grundy Nat'l Bank v. Rife,* 876 F.2d 361 (4th Cir.1989); *In re Carpet Center Leasing,* 991 F.2d 682 (11th Cir.1993) *cert. denied,* 510 U.S. 1118, 114 S.Ct. 1069, 127 L.Ed.2d 388. In all cases, however, the administrative expense inquiry focuses on whether the estate has received an "*actual benefit,*" rather than the existence and/ or extent of the creditor's loss. *Dobbins,* 35 F.3d at 866 (emphasis in original); *see also Broadcast Corp. v. Broadfoot,* 54 B.R. 606, 611 (N.D.Ga.1985) ("the administrative expense scheme does not focus in the first instance on whether a creditor sustained a loss during this period, but on whether the estate has received an actual benefit"), *aff'd, In re Subscription Television,* 789 F.2d 1530, 1532 (11th Cir.1986) (creditor who was obligated to keep broadcast signal available to trustee for sixty day period

---

**3.** The Rule provides, in relevant part:
Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bankr.P. 8013. *Cf.* Fed.R.Civ.P. 52(a) (employing same language but substituting "trial court" for "bankruptcy court").

**4.** At oral argument, Tidewater clarified that it was not seeking an award under 11 U.S.C. § 507(b).

was entitled to an administrative claim only for days in which trustee used, and therefore benefitted from, signal's availability; no administrative priority for remaining days, even though they resulted in the creditor's loss).

 The policy behind awarding administrative expenses is to encourage and reward creditors who do business with an entity after it becomes insolvent. *Williams v. IMC Mortgage Co.*, 246 B.R. 591, 594 (8th Cir. BAP 1999); *In re Robinson*, 225 B.R. 228, 232 (Bankr.N.D.Okla. 1998). In keeping with this purpose, the Fourth Circuit has limited administrative expenses to those claims which confer a *"concrete benefit"* on the estate. *Dobbins*, 35 F.3d at 866 (emphasis in original). This includes the claims of prepetition creditors when their collateral is used either in the operation or reorganization of a debtor's business, or in some other manner that maximizes the assets of the estate. *Id.* at 867; *Broadcast Corp.*, 54 B.R. at 611; *In re J.F.K. Acquisitions Group*, 166 B.R. 207, 212 (Bankr.E.D.N.Y.1994) ("Since the Debtor's use of the Hotel [collateral] and its proceeds went to maintain the property and operate the business" it was "an actual and necessary cost of preserving the estate").

Tidewater, a prepetition secured creditor, seeks payment as an administrative expense to recover the decline in the value of its collateral (seven items of furniture) during the pendency of Smith's bankruptcy case. A prepetition creditor, by virtue of having transacted with a debtor before he or she files for bankruptcy, ordinarily fails the first prong of the administrative expense test (requiring a postpetition transaction between the creditor and the estate). Tidewater attempts to circumvent this problem by arguing that Smith's use of the furniture after her bankruptcy petition conferred a concrete benefit upon her

estate, thereby satisfying the circumstances under which a prepetition creditor may be granted administrative priority. For the following reasons, the court disagrees.

 The Fourth Circuit has recognized that "a § 503(b) administrative expense can be created by a debtor's postpetition use (against the secured creditor's wishes) of collateral which the debtor has also used before going bankrupt." *Dobbins*, 35 F.3d at 867 n. 7. The "typical" example of this is presented in *Grundy Nat'l Bank v. Rife*, 876 F.2d 361 (4th Cir.1989). *Dobbins*, 35 F.3d at 867. In *Grundy*, the court awarded administrative priority to a prepetition secured lender because the Chapter 13 debtor used the two automobiles serving as collateral "in an effort to reorganize his business (vacuum cleaner salesman); the use of the collateral was essential to the reorganization of the debtor's business; and the use caused a decline in the collateral's value." *Dobbins*, 35 F.3d at 867 (*citing Grundy*, 876 F.2d at 363–64). There is no evidence that the collateral in this case has been similarly used. Smith's furniture (and Henson's computer) were consumer purchases used for personal purposes. The items were not employed in an effort to operate or reestablish a business, or make an economic profit for the debtors or their estates.

 Indeed, in most cases, § 503(b) is not the appropriate remedy for a prepetition secured lender whose collateral diminishes in value due to a debtor's postpetition possession and use. *See, e.g., Williams*, 246 B.R. at 595; *Robinson*, 225 B.R. at 233; *In re McLeod*, 205 B.R. 76, 79 (Bankr.E.D.Tex.1996); *First State Bank v. Advisory Information and Management Sys., Inc.*, 50 B.R. 627, 629 (Bankr. M.D.Tenn.1985). The appropriate redress for a creditor in such a predicament is adequate protection. Adequate protection,

defined in 11 U.S.C. § 361, attempts to prevent the unlawful taking of a secured creditor's constitutionally protected property interest by compensating for any diminution in the value of the collateral that occurs after the bankruptcy petition is filed. *See, e.g., In re Jug End in the Berkshires, Inc.*, 46 B.R. 892, 898–99 (Bankr.Mass.1985) (adequate protection protects the constitutionally guaranteed property rights of a secured creditor, while providing a debtor the opportunity to reorganize free from the harassment of creditors); *In re Rhoades*, 38 B.R. 63, 65 (Bankr.D.Vt.1984) (adequate protection is compensatory in nature). Tidewater could have requested adequate protection from the court either when Smith filed her petition, or after she defaulted under her payment plan. Instead, Tidewater did nothing, allowing the collateral to diminish in value for over a year.

 According to Tidewater, a request for adequate protection was unnecessary because a debtor is obligated, in the first instance, to adequately protect a secured creditor's interest, whether the creditor seeks protection or not. (*See* App.Brief, p. 11.) As Tidewater conceded at oral argument, under its theory, any creditor receiving installment payments pursuant to a confirmed plan would be entitled to receive unpaid installments as administrative expenses. Nothing in the Bankruptcy Code or relevant case law, however, supports this view. Indeed, the Code expressly indicates that a creditor must request adequate protection in order to be afforded such relief. *See* 11 U.S.C. § 363(e) ("Notwithstanding any other provision of this section, at any time, *on request of an entity that has an interest in property used*, sold, or leased [ ] by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protec-

tion of such interest.") (emphasis added). Moreover, courts have expressly held that "a creditor is entitled to adequate protection only from the time the same is requested." *Robinson*, 225 B.R. at 233; *see also In re Cason*, 190 B.R. 917, 928 (Bankr.N.D.Ala.1995). As the bankruptcy judge correctly opined, having failed to request adequate protection as the appropriate remedy, Tidewater may not now "use § 503(b) as an alternate means" to accomplish the same end. *In re Karen Smith*, Case No. 99–6–4218, Order Denying Request for Payment of Administrative Expense (Smith Doc. 16); *see also Robinson*, 225 B.R. at 233–34.

Accordingly, the Order of the Bankruptcy Court will be affirmed.