**In re COMPUTER LEARNING CENTERS, INC., Debtor.**

**No. 01–80096–RGM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

July 11, 2003.

James W. Reynolds, Odin, Feldman & Pittleman, Fairfax, VA, Robert O. Tyler, Tyler, Bartl, Gorman & Ramsdell, PLC, Alexandria, VA, Scott J. Newton, Stephens, Boatwright, Primeau & Cooper, Manassas, VA, for Debtor.

James W. Reynolds, Odin, Feldman & Pittleman, Fairfax, VA, Janine H. Bosley, Bosley Hutzelman, Alexandria, VA, Stanley A. Freeman, Powers, Pyles, Sutter & Verville, PC, Washington, DC, for Donald F. King, trustee.

Dennis J. Early, Frank J. Bove, Jack Frankel, Office of U.S. Trustee, Alexandria, VA, for W. Clarkson McDow, Jr., II, U.S. Trustee.

Joseph Benstock, Los Angeles, CA, Pro se.

### MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

The question presented by this case is whether a creditor holding a contingent unliquidated unsecured pre-petition claim is entitled to an administrative priority under 11 U.S.C. § 503(b)(1)(A) when is liquidates its claim post-petition.

## Background

Computer Learning Centers, Inc., filed a voluntary petition in bankruptcy under chapter 7 of the United States Bankruptcy Code on January 25, 2001. Prior to filing its petition, the debtor was engaged in the business of providing computer related training courses at 25 schools throughout the United States, four of which were located in California. On January 22, 2001, three days before filing its petition, it ceased operations. By March 2001, the chapter 7 trustee had sold most of the schools and abandoned those that he could not sell.

The debtor had numerous books and records—both student records and business records. Under various state laws, educational institutions such as the debtor are required to maintain certain student records for various periods of time. In California, this requirement is codified in § 71930 of Title 5 of the California Code of Regulations. Section 71930(a) provides that a school shall maintain all records required by law and all records that relate to the institution's compliance with the law for five years. Section 71930(b)(1) requires it to maintain student transcripts for 50 years. Moreover, in the event that an institution closes, it and its owners are "responsible to arrange at their expense for the storage and safekeeping in California" of the required records. The trustee reviewed the debtor's California records and shipped those that were relevant to his administration of the estate to Virginia. The student record retention requirements for some schools outside California were satisfied by transferring the records to the purchasers of the schools affected. *See* Application to Destroy Books and Records and Abandon Property at ¶ 11. (Docket Entry 209). The records from four California schools were turned over to the California Bureau for Private Postsecondary and Vocational Education [1] in March 2001 by agreement between the trustee and the Bureau. The trustee's March 16, 2001, e-mail to the Bureau stated, in part:

> We understand that the State of California is assuming custody of these records at its own expense and that should the Chapter 7 Trustee require access to these records in the future, that such access will be reasonably permitted.

The Bureau responded the same day, acknowledging that it would "take custody" of the records and advise the trustee which records, if any, it could not legally retain. Its e-mail continued:

> As we discussed, please send me a copy of the "Proof of Claim" form for filing a bankruptcy claim or the site link for obtaining an electronic copy. Also, please understand that the Bureau reserves the right to file a proof of claim to recover any and all costs associated with assuming custody of the records.

Declaration of Kristy Schieldge, Exhibit A (Docket Entry 1104). The Bureau never filed a proof of claim for these amounts. It did file a proof of claim for reimbursement of funds expended under the Student Tuition Recovery Fund, a fund created to assure that students receive either the education promised or the refund of their tuition.[2] It took "custody" of the records about March 16, 2001.

---

1. The Bureau is a part of the Department of Consumer Affairs.

2. Proof of Claim No. 2184, filed on May 31, 2001 asserts a claim in the amount of $2,538,421.06. It was amended on August 9, 2002 to assert a reduced claim of $1,526,752.85. Claim No. 3735. The initial proof of claim was denoted as "contingent upon future claims." The amended claim asserts claims on behalf of the Student Tuition Recovery Fund, some of which are asserted to be priority claims and some to be non-priority claims.

The trustee filed an Application to Destroy Books and Records and Abandon Property on April 5, 2001. (Docket Entry 209). The application stated that he had, "to the best of his ability, complied with all regulatory requirements with regard to student records by turning those records over to third parties who will act as custodian of those records. Moreover, the Trustee sold a portion of the records at a number of Schools as part of the going-concern sales of those Schools." Application at ¶ 11. The application continued:

The Trustee has taken steps to preserve the remaining records of the Debtor. To the extent that it is economically feasible, the Trustee has arranged to have the remaining records packed and transported to a local facility for storage and review. At a number of locations, to include all Schools located in California, the cost of packing and transporting records is prohibitive.

Application at ¶ 12. The Bureau received a copy of the application and the notice of the hearing on the application. Neither the Bureau nor any other creditor or party in interest objected and on April 19, 2001, the application was approved. Order Authorizing Destruction of Books and Records and Abandonment of Property entered October 19, 2001 (Docket Entry 233). The order authorized the trustee to destroy books and records upon further notice to the debtor, the United States Trustee, the United States Attorney and the chairman of the unsecured creditors committee. Further notice as provided in the order was given on seven occasions. None, however, expressly covered the disposition of books and records transferred to the Bureau.[3]

On March 10, 2003, the Bureau filed a request for payment of an administrative expense. Request for Payment. (Docket Entry 1101).[4] It requested $166,415.45. The amounts were for moving expenses of $23,484.15, personnel travel expenses of $2,013.55, storage expenses from April 2001 through February 2003 of $33,464.22, and document conversion expenses of $107,463.53.[5]

### Positions of the Parties

#### Bureau of Private Postsecondary & Vocational Education

The Bureau asserts that the trustee is required to comply with the provisions of California Code of Regulations, Title 5, § 71930(a)-(b)(1) to keep all records required by law and student transcripts. The records, it asserts, were vital to the trustee in evaluating claims filed and determining the basis for objections to claims

---

3. Application for Destruction of Books and Records filed July 19, 2001 (approximately 600 boxes)(Docket Entry 379); Second Notice of Abandonment of Property [and] Destruction of Books and Records filed October 26, 2001 (728 boxes)(Docket Entry 485); Third Notice of Abandonment of Property [and] Destruction of Books and Records filed December 7, 2001 (104 boxes)(Docket Entry 521); Fourth Notice of Abandonment of Property [and] Destruction of Books and Records filed January 8, 2002 (145 boxes)(Docket Entry 549); Fifth Notice of Abandonment of Property [and] Destruction of Books and Records filed April 10, 2002 (1,316 boxes)(Docket Entry 665); Sixth Notice of Abandonment of Property [and] Destruction of Books and Records filed June 10, 2002 (181 boxes)(Docket Entry 712); Seventh Notice of Abandonment of Property [and] Destruction of Books and Records filed May 1, 2003 (electronic records)(Docket Entry 1149).

4. No proof of claim for the amounts requested in the Request for Payment was filed.

5. The prospective expense is to convert the paper records into a digital format. The objective is to save "hundreds of thousands of dollars in storage fees over the next 50 years." Request for Payment, ¶ 14. (Docket Entry 1101).

filed. In fact, the trustee requested copies of student transcripts for all "active" students and other information contained in the records turned over to the Bureau. The Bureau's costs were actual, necessary costs and expenses of preserving the debtor's records. Consequently, the Bureau argues that it is entitled to an administrative expense for all amounts incurred for recovering and storing the records and all amounts to be incurred with respect to digitizing the paper records. Request, ¶¶ 16–17.[6]

### Ogletree, Deakins, Nash, Smoak & Steward, P.C.

Ogletree, Deakins, Nash, Smoak & Steward, P.C., a creditor,[7] objected to the request. Ogletree Deakins opposed it because it was filed after the bar date. Letter dated March 13, 2003. (Docket Entry 1112). Olgetree Deakins did not appear at the hearing.[8]

### Trustee

The trustee argues that the Bureau's claim—if it has a claim at all—is an unsecured, nonprioirty claim. He asserts that the agreement between the prior trustee and the Bureau was that the Bureau was responsible for all expenses incurred in connection with the records turned over to the Bureau. Moreover, he argues, the claimed expenses were not actual and necessary costs and expenses for preserving property of the estate. Trustee's Opposition. (Docket Entry 1142). While the estate may have benefitted incidentally from the records after they were turned over to the Bureau, it was of no greater benefit than would have been obtained if the trustee had issued a subpoena or undertaken formal discovery in connection with the proof of claim the Bureau filed. Finally, the Bureau has the burden of proof on the reasonableness of the claimed expenses and failed to present any evidence. Transcript of April 29, 2003 hearing at 8–9, 17. ("Tr.")

### Discussion

#### Nature of Claim

■ The Bureau has a pre-petition claim arising from California Code of Regulations, Title 5, § 71930 which requires every educational institution to maintain certain records even after the institution closes. This obligation is a claim within the definition of § 101(5). As in *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), the debtor had a statutory duty, in this case to maintain its records both while it operated and after it closed. The debtor closed shortly before filing its petition in bankruptcy and was subject to § 71930(g) which obligated the debtor to maintain the records at its expense. The failure to do so would result in the Bureau incurring the debtor's expense of maintaining the records. This is in fact what was done. Because of the nature of the records, they could not simply be discarded. As pointed out in Justice O'Connor's concurring opinion in *Ohio v. Kovacs*, if the Bureau did not have a claim it would be left without any recourse. The debtor's

---

6. The Bureau's papers and argument are not entirely consistent. The prayer for relief asks that the $107,453.53 digitizing expense be allowed as a general unsecured claim and not as an administrative expense. The body of the request for payment asks for $58,961.92 as an administrative expense and $107,453.53 as a general unsecured claim.

7. Ogletree Deakins filed a proof of claim for $62,112.02 on April 5, 2001. Proof of Claim 1373.

8. No bar date for requests for payment of administrative expenses was set and the request is, therefore, timely. The objection need not be considered further.

assets will be liquidated and distributed to creditors. After the bankruptcy case is closed, the debtor will be shorn of its assets and will be unable to comply with § 71930(g) and unable to reimburse the Bureau for the costs it will incur maintaining the records as required by § 71930. *Id.*, 469 U.S. at 286, 105 S.Ct. at 712.

### March 16, 2001 Agreement

The Bureau argues that the March 16, 2001, agreement with the trustee only obligated the Bureau to accept custody of the records and that it did not waive any right to be reimbursed its expenses. The trustee argues that the Bureau expressly waived storage costs. The parties stipulated to the e-mail exchange. The trustee's initial e-mail was plain and unambiguous. The Bureau was assuming custody "at its own expense." An agreement requires an acceptance and the Bureau's reply later that day did not fully accept the trustee's proposal. It reserved the ability to file "a proof of claim to recover any and all costs associated with assuming custody of the records" and requested a copy of the proof of claim form or the site link so that the Bureau could obtain an electronic copy. The trustee accepted the counterproposal the following morning when he provided the web address for a copy of the proof of claim, advised the Bureau of the bar date (which was about 10 weeks away) and sought confirmation that the records had been transferred to the Bureau. The Bureau did file a proof of claim, but not for these expenses.

The Bureau now argues that it reserved the right to request payment of at least a portion of its claim as an administrative expense. It posits that the reference to a proof of claim in its e-mail encompassed a request for payment of an administrative expense. It argues for a broad construction of "proof of claim." While it acknowl-edges that it did not use "the right nomenclature" it argues that the context was sufficiently murky to require the trustee to inquire further: "Do you really mean a proof of claim?" Tr. 14–15. The trustee notes the significant difference between a request for payment and a proof of claim. In this case as in most chapter 7 cases, one will receive priority and full immediate payment while the other will receive a deferred prorata payment after all administrative claims. No witness testified.

The court is satisfied from the documentary record which includes the e-mail exchange and the trustee's later application for approval of the process to destroy or abandon records, that there was a meeting of the minds and that the parties agreed that the Bureau could file a proof of claim for its expenses. The e-mail exchange is clear. The trustee was not seeking to limit the Bureau's ability to file any appropriate proof of claim—a right the Bureau had without any agreement—but did not want to extend the estate's liability by entering into the agreement with the Bureau. Even without the agreement, the Bureau had a contingent, unliquidated unsecured nonpriority claim for the debtor's noncompliance with § 71930 and had the right to file a proof of claim. The resolution of the problem of maintaining the required records was to turn over the records to the Bureau. This removed the contingency of whether the debtor would become in default of the regulation. However, it did not change the nature of the claim or advance the Bureau's priority which could only be done at the expense of all other unsecured nonpriority creditors. The trustee's e-mail made clear that he was not changing or extending the estate's liability. The Bureau's response did not seek to extend the estate's liability.

This is confirmed by the trustee's application to establish a mechanism to destroy

unnecessary records. The application recognized a distinct obligation with respect to student records as opposed to ordinary business records. It recited that the trustee had made arrangements to turn over student records to third party custodians or had included them in the sales of the schools as going concerns. Application at ¶ 11. It then described the intended process with respect to business records. Application at ¶¶ 12–13. Finally, the application stated unequivocally that books and records "not necessary for the administration of the Debtor's estate, which are not economically feasible to store, and which represent a burden to the Debtor's estate" will be destroyed. Application at ¶ 14. The records "not economically feasible to store" referred to the California non-student records described in paragraph 12 of the application which were not within the scope of § 71930, not the student records required to be maintained and for which arrangements had been made as described in paragraph 11. At the time of the application, the trustee believed that he had—and in fact had—properly disposed of the student records by transferring the California student records to the Bureau and had transported any necessary business records to Virginia for further review. The application set out this situation. The Bureau received the application and did not object. It apparently agreed with the recitations in the application. It sent no invoice for any of the moving expenses. It sent no bills for the monthly storage fees. It made no claim for an administrative claim for almost two years notwithstanding that expenses were being incurred every month.

The Bureau agreed at the hearing that it would not have an administrative claim forever. "It would be foolish for me to say that the estate's obligation stays forever and certainly not for the 50 years the law

otherwise requires the records to be kept." Tr. at 4.

> MR. GREEN: All the state has ever needed to possibly put an end to the estate's obligation here was something from [the trustee] or his counsel saying[, "W]e don't need the records anymore[."]; and Your Honor, we've never received any of that, and there is nothing in the Court's filed which reflects it.
> THE COURT: If you received that, what would you do with the records?
> MR. GREEN: If we received that, we would certainly cut off any endeavor by the state to have the estate pay anything more.

Tr. at 13. The trustee's application provided the very notice that the Bureau now claims it needed to terminate the estate's liability for an administrative expense. It set out the resolution of the student records problem. No one objected. The parties operated under the agreement for almost two years. Only then—and without any prior demand or complaint—did the Bureau request payment of an administrative expense. The trustee was not required to give the Bureau any further notice or obtain any further order from this court. The order entered on April 19, 2001, approved all third party custodial relations, including this one with the Bureau. The March 16, 2001 agreement between the trustee and the Bureau as approved by the court in the April 19, 2001 order does not form the basis for any additional liability by the estate nor does it limit the Bureau's right to seek reimbursement by filing a proof of claim.

*Administrative Expense Claim*

Notwithstanding that the Bureau had the right to file a proof of claim, it asserts that the amounts that could be included in its pre-petition claim must now be treated as an administrative expense under 11

U.S.C. § 503(b)(1)(A) as "actual, necessary costs and expenses of preserving the estate." It asserts that the records were "vital in evaluating the claims of the California students and Bureau." Application at ¶ 8. This allowed the trustee to eliminate duplicate claims for California students who filed a proof of claim for unearned tuition and also received a refund through the Student Tuition Recovery Fund administered by the Bureau. The Bureau also filed a proof of claim for the reimbursement of the amounts it paid to the students, thereby duplicating the students' proofs of claims.[9] The Bureau stated that the trustee requested extensive information from the student records it maintained in order to sort this problem out. Application at ¶¶ 8–9.

 The burden of proof on an application for payment of an administrative expense is on the applicant. *In re Merry-Go-Round Enterprises, Inc.,* 180 F.3d 149, 157 (4th Cir.1999); *Ford Motor Credit Company v. Dobbins (In re Dobbins),* 35 F.3d 860, 866 (4th Cir.1994). Administrative expenses are narrowly construed because they run counter to the central premise of bankruptcy distributions which is a prorata distribution among all creditors. *Merry-Go-Round Enterprises, Inc.* at 157; *Dobbins* at 865; *Tidewater Finance Company v. Henson,* 272 B.R. 135, 138 (D.Md.2001) *affd.* 57 Fed.Appx. 136 (4th Cir.2003)(unpublished). There are exceptions to the prorata distribution scheme in 11 U.S.C. §§ 503 for administrative expenses and 11 U.S.C. § 507 for certain priorities. The purpose of the administrative expense exception is to encourage third parties to do business with a reorganizing debtor or with the trustee liquidating the estate. *Tidewater Finance Co.,* 272 B.R. at 139; *Williams v. IMC Mortgage Co.,* 246 B.R. 591, 595 (8th Cir. BAP 1999). The Bureau's claim does not fit neatly within the accepted rationale for an administrative expense because the Bureau took custody of the records to satisfy its statutory requirement that the records be preserved. This requirement is unrelated to the purpose of allowing administrative expenses priority because it is directed to preserving the records for the future benefit of the students who studied at the institutions and not to the trustee's duty of liquidating assets of the estate. Notwithstanding the purposes underlying the statute, the Bureau has larger problems: The records were not property of the estate after they were turned over to the Bureau on March 16, 2001 and the Bureau has not carried its burden of proof.

The trustee and the Bureau intended that the Bureau become the permanent custodian of the records. It was not a temporary arrangement for the convenience of one or the other party. When the records were transferred to the Bureau and the order of April 19, 2001 was entered, the records ceased to be property of the estate. While the application to dispose of and to destroy the books and records of the debtors did not expressly request that these records be abandoned and the April 19, 2001 order did not expressly state that they were abandoned, the application was clear as to their disposition and both the trustee and the Bureau clearly understood the disposition made of the records. The trustee was careful to assure

---

**9.** The Bureau filed its first proof of claim on May 31, 2001, and estimated the amount that it would pay from the Fund at $2,538,421.06. (Proof of Claim 2184). The proof of claim stated that it was "Contingent upon future claims." It filed a far more detailed amended proof of claim on August 9, 2002, asserting a claim of $1,526,752.85 and separating it into a priority component of $617,590.09 and a non-priority component. It also removed the contingency notation.

that he would have any necessary access to the records, a recognition that he would no longer be in control of the records. The Bureau investigated and is in the process of making arrangements to digitize the records. This is consistent with their control over the records, particularly considering that the originals will be destroyed when they are digitized. While the word "abandon" may not have been used by the trustee in March and April 2001, the e-mail correspondence, the explanation and description in the Application to Destroy Books and Records, the April 19, 2001 order and the conduct of the parties are all the functional equivalence of abandonment. It follows that if the records were not property of the estate, the Bureau has not been preserving any property of the estate and is not entitled to any administrative expense from the estate for preserving the Bureau's own property.

 If the records had remained property of the estate, the Bureau failed to carry its burden of proof on its application for payment of administrative expense. It has not adequately shown that the costs and expenses that it requests were necessary. It asserts that the records were necessary to enable the trustee to resolve the Bureau's proof of claim. A properly executed and filed proof of claim "constitutes prima facie evidence of the validity and amount of the claim" but, the ultimate burden of proof with respect to the Bureau's proof of claim remains on the Bureau.[10] F.R.Bankr.P. 3001(f); *Raleigh v. Illinois Department of Revenue (In re Stoecker)*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *In re Landbank Equity Corp.*, 973 F.2d 265 (4th Cir.1992). If the trustee had objected to the Bureau's proof of claim, he would have borne the burden of going forward and introducing sufficient evidence to rebut the presumption of validity. *In re Saunders,* 159 B.R. 482 (Bankr.W.D.Va.1993) *affd.* 167 B.R. 832 (W.D.Va.1994); 8 Collier on Bankruptcy ¶ 3001.09[2] (15th ed. revised 2003).

> The party objecting to the claim has the burden of going forward and of introducing evidence sufficient to rebut the presumption of validity. Such evidence must be sufficient to evidence a true dispute and must have probative force equal to the contents of the claim. Upon introduction of sufficient evidence by the objecting party, the burden of proof must then be met by the claimant by a preponderance of the evidence.

*Saunders* at 484 (quoting 8 Collier on Bankruptcy ¶ 3001.05 (15th ed.1993)).

It is likely that the trustee would have met this burden. The Bureau's proof of claim was clearly provisional. It stated on its face that it was "[c]ontingent upon future claims" and that the basis of the claim was payment of student claims from the Student Tuition Recovery Fund. At the same time, innumerable proofs of claims were filed by California students for tuition refunds. The Bureau would then have been required to prove its loss, the presumption of validity of its claim having been overcome. The Bureau and the trustee worked together to resolve this problem. They conserved their respective resources and avoided what could have been expensive litigation. They now appear to have resolved the claim, although it is not clear if the amended proof of claim—which reduced the Bureau's claim by more than a million dollars—is the final resolution. In these circumstances, the Bureau's argument that because the trustee obtained some benefit from the records, he should

---

**10.** The rule is that the burden of proof remains on the party that would bear the burden of proof under nonbankruptcy law in a nonbankruptcy forum. This is usually—but not necessarily—the claimant.

be responsible for the entire cost of securing the records, storing them and digitizing them for future reference, is not sufficient. It fails to properly allocate the benefit to the estate to the actual costs.

Second, the expenses have not been adequately proven. While the Bureau did provide affidavits, the trustee objected to them as hearsay. While the hearsay cannot be accepted over objection, the affidavits are themselves insufficient. The affidavits assert that the records were stored in two facilities. One was an outside storage facility which originally cost $266.00 per month. The other was in a state-owned facility. Tr. 5, 7. They are unclear as to the amount of records stored at each facility and the relative cost of the two facilities. It is not known if the state-owned facility was more expensive than the outside storage facility or why all the records were not stored at the less expensive facility. The rent at the state-owned facility was computed "by some bureaucratic formula." Tr. 7. While the affidavits set forth the basis for the computation, it is not possible to determine whether the "bureaucratic formula" was appropriate especially considering the use of the state-owned facility.[11] The Bureau attempted to show that the rental rates were reasonable by comparing the Bureau's costs to the trustee's costs for storage of business records in Virginia. This is unavailing because it is not possible to compare the two facilities. The relative sizes are unknown. The volume of records stored in each is unknown. In Virginia, the storage facility also includes space for the trustee's employees to review the records. Finally, it is unclear whether the Bureau is storing only required records and whether all the records were necessary or even helpful to the trustee.

 The future costs to digitize the records cannot be allowed. Section 71930 does not require all records to be retained for 50 years, only the student transcripts. The remaining records are only required to be retained for five years. There is no evidence as to the cost of digitizing the student transcripts alone and no comparison of the storage costs in paper medium for those records which must only be retained for an additional 19 months with the cost of digitizing them as well.

Even if the records were property of the estate and all the costs are properly allocable to the estate, the Bureau has failed to carry its burden of proof with respect to its request for payment. The request will be denied.

---

**11.** The state-owned facility appears to be an office building, not a storage facility.