### In re MOTEL INVESTMENTS OF CHRISTIANSBURG LLC DBA Fairfield Inn & Suites, Debtor.

#### No. 7–03–01733.

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

March 1, 2004.

tion.

Andrew S. Goldstein, Roanoke, VA, for Debtor.

Phillip R. Lingafelt, Glenn, Feldmann, Darby & Goodlatte, Roanoke, VA, for CFC.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

On December 24, 2003, Carolina Fire Control, Inc. ("CFC") filed its Motion for Payment of Administrative Claim, alleging the following factual grounds for relief: On March 10, 2003, more than one month prior to the date Debtor filed its bankruptcy petition, CFC obtained a judgment against Debtor in the amount of $109,713.04, inclusive of interest through April 24, 2003, in the General Court of Justice, Superior Court Division of Cabarrus County, North Carolina (Case No. 02–CVS–191). In the North Carolina suit, Debtor was represented by counsel and received notice of the judgment, yet Debtor failed to include CFC on Debtor's bankruptcy schedules or provide CFC with notice of this bankruptcy filing. Without notice of the filing, CFC incurred $5808.58 in legal expenses pursuing collection of the judgment. Only after CFC had garnished Debtor's bank accounts did Debtor notify CFC of the bankruptcy. On the basis of these allegations, CFC asserts an administrative claim for its post-petition legal expenses, pursuant to 11 U.S.C. § 503(b).

At the hearing on January 14, 2004, CFC and Debtor presented for the Court's approval an agreement in settlement of the Motion: Debtor agreed to pay $5000.00 to CFC as an administrative claim. The Court took the matter under advisement

and invited counsel for CFC to submit a memorandum in support of the Motion. Counsel for CFC did so by letter dated January 21, 2004. In the letter, CFC relies upon *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), in which the negligence of a receiver operating a Chapter XI business caused a fire that spread to adjacent property. The neighboring property owners sought an administrative claim for the fire damage, presenting the Supreme Court with this issue:

> At the moment when an arrangement is sought, the debtor is insolvent. Its existing creditors hope that by partial or complete postponement of their claims they will, through successful rehabilitation, eventually recover from the debtor either in full or in larger proportion than they would in immediate bankruptcy. Hence the present petitioner did not merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law. That business will, in any event, be unable to pay its fire debts in full. But the question is whether the fire claimants should be subordinated to, should share equally with, or should collect ahead of those creditors for whose benefit the continued operation of the business (which unfortunately led to a fire instead of the hoped-for rehabilitation) was allowed.

*Reading*, 391 U.S. at 478, 88 S.Ct. 1759. The Court resolved the issue in favor of the administrative claimants, finding it "more natural and just" to allow those injured by the operation of the business in bankruptcy to recover ahead of the creditors who stood to benefit from the operation, but for the fire. *Id.* at 482, 88 S.Ct. 1759. Specifically, the Court held that "damages resulting from the negligence of a receiver acting within the scope of his authority as receiver give rise to 'actual and necessary costs' of a Chapter XI arrangement." *Id.* at 485, 88 S.Ct. 1759.

CFC also relies on *Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*, 755 F.2d 200 (1st Cir. 1985), in which the debtor-in-possession continued to operate its business in violation of a zoning ordinance and an injunction, to the detriment of surrounding business owners. The aggrieved business owners sought an administrative claim for their legal fees incurred post-petition, presenting the court with the issue of whether the legal fees constituted an actual and necessary cost of preserving the estate pursuant to 11 U.S.C. § 503(b)(1)(A). *Charlesbank Laundry*, 755 F.2d at 201. In adopting the rationale of the *Reading* Court, the First Circuit opined:

> The debtor in this case *deliberately* continued a violation of law month after month presumably because it was more lucrative for the business to operate outside the zoning ordinance than within it. If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then, *a fortiori*, an intentional act which violates the law and damages others should be so treated.

*Id.* at 203. Thus, the First Circuit allowed the claim the priority of an administrative expense. *Id.*

■ This Court is more persuaded by *In re Unidigital, Inc.*, 262 B.R. 283 (Bankr.Del.2001), in which the debtors' landlord sought an administrative claim to recoup the cost of removing the debtors' personal property from the leased premises. The landlord argued that, by leaving objects on the landlord's real property, the debtors interfered with the landlord's use and enjoyment of the premises, thereby committing the torts of trespass and private nuisance. *Unidigital*, 262 B.R. at

289. Because the debtors' actions occurred post-petition, the landlord claimed an administrative expense under the authority of *Reading*. *Id.* The court denied the landlord's claim, distinguishing *Reading* from the landlord's case on the grounds that the alleged tort "was not committed during the conduct of business which benefitted the estate and other creditors." *Id.* at 290.

This case is likewise distinguishable from *Reading* in that CFC's injuries do not arise from the post-petition operation of Debtor's business. The general creditors, ahead of whom CFC hopes to collect, stood to gain nothing from the alleged actions giving rise to CFC's claim. While it is regrettable that CFC must bear the expense of pointless litigation, there is no justification for shifting that burden onto innocent creditors.

 "Administrative expenses are narrowly construed because they run counter to the central premise of bankruptcy distributions which is a pro rata distribution among all creditors." *In re Computer Learning Ctrs., Inc.,* 298 B.R. 569, 577 (Bankr.E.D.Va.2003) (citations omitted). To qualify as an actual and necessary expense, "(1) the claim must arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee) and (2) the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor-in-possession in the operation of the business." *In re Merry–Go–Round Enterprises, Inc.,* 180 F.3d 149, 157 (4th Cir.1999) (citation omitted). The administrative expense exception is intended "to encourage and reward creditors who do business with an entity after it becomes ` insolvent." *Tidewater Fin. Co. v. Henson (In re Smith),* 272 B.R. 135, 139 (D.Md.2001) (citations omitted). CFC's claim neither fits the definition of administrative expenses,

nor implicates the policy behind allowing them. There was no post-petition transaction between CFC and Debtor, and CFC's legal expenses conferred no benefit on Debtor in the operation of the business. If the Court were to allow CFC's claim, it would not serve the purpose of rewarding CFC for continuing to do business with Debtor; rather, it would only punish innocent creditors. Accordingly, it is

## ORDERED:

That CFC's Motion for Payment of Administrative Claim is hereby **DENIED**.